FRED FOLK, Plaintiff-Appellant, *v.* NATIONAL BEN FRANKLIN INSURANCE CO. *et al.*, Defendants-Appellees.

Fourth District    No. 13394

Opinion filed December 30, 1976.

Costigan, Wollrab, Fraker, Wochner & Neirynck, of Bloomington, for appellant.

Clausen, Miller, Gorman, Caffney & Witous, and John W. Morrison, of Karon, Morrison & Savikas, Ltd., both of Chicago (James T. Perrini and William J. Sneckenberg, of counsel), for appellees.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

On July 1, 1971, a fire damaged a restaurant and lounge owned by the plaintiff. The building and its contents were covered by six fire insurance policies, one issued by each of the six defendant insurance companies. On August 4, 1972, plaintiff filed suit in McLean County to recover damages for fire loss under those policies.

Defendants raised four affirmative defenses: (1) that plaintiff failed to file suit within 12 months as required in the policies; (2) that plaintiff intentionally caused the fire; (3) that plaintiff violated the policies by failing to preserve and protect the property after the loss; and (4) that plaintiff was guilty of concealment, false swearing, and fraud, thus voiding the entire policies. The jury was instructed on each of these defenses and returned a general verdict in favor of the defendants.

On appeal, the plaintiff claimed that the verdict was against the manifest weight of the evidence on each of these four defenses. This contention was waived at oral argument. Plaintiff also contended there was reversible error in the admission of several defense exhibits and that the jury was erroneously instructed in several respects concerning both instructions that were given and one that was refused.

We need not consider each of these issues individually since we are convinced that to do so would be unnecessary.

■■ Each of the policies involved here contain the standard fire provision:

> "Concealment, fraud. This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

Defendants raised this as an affirmative defense. Under Illinois law, fraud and false swearing by the insured made in the proof of loss will render the policy void if, as here, the policy provides for such a result from such conduct. *Kavooras v. Insurance Co.* (1912), 167 Ill. App. 220;

*Tenore v. American and Foreign Insurance Co.*, 256 F.2d 791 (7th Cir. 1958), *cert. denied*, 358 U.S. 880, 3 L. Ed. 2d 110, 79 S. Ct. 119.

Ordinarily, fraud and false swearing is a question of fact for the jury but it becomes a question of law when the insured's misrepresentations cannot in any way be seen as innocent. Of course, the well-accepted rule in Illinois respecting motions for directed verdicts was laid down in the case of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. The rule is that verdicts are to be directed in those cases in which all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.

■■ Of course, in the instant case the defendants need only establish one of the four affirmative defenses to defeat any recovery by plaintiff under the policies. For that reason, the *Pedrick* rule can be applied separately when analyzing the evidence bearing on each of these defenses. Defendants made motions for a directed verdict both at the close of plaintiff's case and at the close of all of the evidence. Both were denied. We hold that the latter motion should have been granted because the evidence on the defense of false swearing and fraud in connection with the plaintiff's claim was so clear that, under *Pedrick*, it became a matter of law.

We do not see how the evidence could support a hypothesis of innocent or unintentional misrepresentation in plaintiff's preparation of the inventory lists, plaintiff's exhibits H and I, prepared to go with plaintiff's proof of loss. Plaintiff's exhibit H represents the final inventory of damaged equipment and fixtures for which plaintiff made his claim and was prepared in connection with plaintiff's second proof of loss. It lists each item by description, where purchased, the date of purchase, the original cost, and the depreciated value claimed. Nowhere does it indicate any amounts as credit for items sold after the fire. Plaintiff's exhibit I lists consumables, liquor and food, which plaintiff claimed as a loss.

Defendants contend that plaintiff's exhibit H contains several items which were sold or repossessed after the fire and the value claimed for those items does not reflect the amount plaintiff received for the sale or his credit after repossession. Review of the record substantiates this allegation. Defendants' exhibit 32 is a list of items picked up and repossessed by Hockenbergs in January 1972. Defendants' exhibit 33 is a copy of the memo showing credit plaintiff received for those items. It is clear that several of those items were listed on plaintiff's exhibit H, his inventory for proof of loss, without reflecting any credit given by Hockenbergs, in particular, the South Bend range, the Erecta shelving, and the Mile High flaker.

In addition, when questioned under oath in April 1972, plaintiff stated that he still had the food warmer and that the freezer, all items on page 4 of exhibit H, and all except three items on page 3 of exhibit H were taken to the dump. At trial, however, plaintiff testified that he sold the freezer. Mr. Robert Wilcox, owner of the Wigwam Supper Club, testified that he purchased equipment and restaurant supplies from plaintiff on January 3, 1972. Defendants' exhibit 34 is a list of those items, including freezer and food warmer, and the price he paid for each. Other items listed on defendants' exhibit 34 appear on pages 3 and 4 of plaintiff's exhibit H and the depreciated value is claimed for each. Plaintiff's exhibit H was prepared to go with the second proof of loss which was submitted January 12, 1972, *after* the sale to Mr. Wilcox. Plaintiff's exhibit H should have reflected those sales, but it did not and plaintiff made no effort after the extensive questioning under oath in April 1972, or at any time up to the date of trial, to adjust his claim to reflect money he had received for items claimed on plaintiff's exhibit H.

Since the freezer in question was sold to Mr. Wilcox for $530 and the food warmer for $25, not to mention the other items, it is clear that plaintiff's neglect to credit cash received for these items on plaintiff's exhibit H was material. We cannot imagine how plaintiff could have sold a large freezer out of his restaurant to Mr. Wilcox in January of 1972 for over $500, then in April state under oath that he threw it away at the dump because it was a total loss.

Defendants also deem fraudulent plaintiff's claim for meat and vegetables as shown on plaintiff's exhibit I. Plaintiff testified at trial that he immediately disposed of meats and other open packages at the direction of Mr. Mills of the county health department. Paul Mills then testified that he inspected plaintiff's restaurant the day of the fire and prepared a destruct order listing all items being condemned. No meat or vegetables are listed on the destruct order, plaintiff's exhibit J, and it was signed by both Mr. Mills and the plaintiff. Mills testified that had he seen contaminated meat or vegetables he would have made a note of it on his destruct order.

As defendants contend, listing items on a claim which are not lost or damaged has been held to be fraudulent. (*Mercantile Trust Co. v. New York Underwriters Insurance Co.* (7th Cir. 1967), 376 F.2d 502.) Also, placing a value on items which does not reflect salvage or sale may also be fraudulent. *Tenore*.

We believe that the situation here is comparable to that in *Tenore*. There, in his sworn proof of loss, the insured claimed the value of his destroyed guns was over $60 each, the wholesale price of a new gun, when in fact many of the guns were over 50 years old, cracked, and were missing parts. The Court of Appeals reversed a judgment for the insured and held that as a matter of law the insured had intentionally made false

statements. The policy had the same provision as that present in this case, rendering the policy void if there is fraud, false swearing or willful concealment. We realize that *Tenore* is a case of deliberate exaggeration of value but see no distinction between that and a case such as this where the intentional over-valuation of a claim is due to the concealment of cash received for items claimed at their depreciated value.

■■ For these reasons, we hold that plaintiff in this case knowingly and willfully made false statements and through omission concealed material facts with intent to defraud. By reason thereof the plaintiff is not entitled to recover under his policies.

■■ Where it seems obvious no decision more favorable to the appellant would result from another trial, the judgment will not be reversed because of procedural errors. (*City of Chicago v. Jackson* (1902), 196 Ill. 496, 63 N.E. 1013.) It would be a useless act for us to consider alleged errors in evidentiary rulings or the jury instructions. These involved procedural aspects of the trial which, even if error, do not change the fact that plaintiff made false statements in April 1972 after he had prepared the list we now have as plaintiff's exhibit H. This fact could not be changed by remanding for a new trial and defendants still would be entitled to judgment as a matter of law. For this reason we do not consider the sufficiency of the evidence on the other three affirmative defenses or the alleged errors in the evidentiary rulings and jury instructions.

Affirmed.

GREEN and REARDON, JJ., concur.