REGINALD FITZGERALD, Plaintiff-Appellant, v. MFA MUTUAL INSUR-
ANCE COMPANY, Defendant-Appellee.

Fifth District No. 5—84—0016

Opinion filed June 14, 1985.—Rehearing denied July 15, 1985.

KASSERMAN, J., dissenting.

Crowder & Scoggins, Ltd., of Columbia, for appellant.

Wagner, Bertrand, Bauman & Schmieder, of Belleville (William F. Kopis, of counsel), for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Reginald Fitzgerald, filed a two-count complaint against defendant, MFA Mutual Insurance Company (MFA), alleging, in count

I, breach of a fire insurance policy and, in count II, breach of duty of good faith and fair dealing. At the close of the case, on the motion of defendant, the circuit court of St. Clair County directed verdicts on both counts. Plaintiff appeals the directed verdict on the first count. We reverse.

Mr. Fitzgerald owned a home located at 1115 St. Patrick in Cahokia. The residence was insured by MFA under MFA's policy No. 12—7—795036. The policy provided the following coverage: $50,400 for the dwelling itself, $25,200 for personal property, and $10,080 for additional temporary living expenses.

On September 27, 1980, the Fitzgeralds left their home for the weekend and went to visit relatives in Arkansas. In the early morning hours of September 29, 1980, there was a loud explosion in the residence. The residence burned and was partially destroyed. It was when the Fitzgeralds returned home from Arkansas in the late afternoon of September 29, 1980, that they first learned of the fire.

Upon their return from Arkansas, Mr. and Mrs. Fitzgerald made a brief inspection of the house. Although the fire itself was confined to the kitchen and dining room areas, there was extensive smoke and water damage throughout the house. They failed to conduct a detailed inventory at that time because Mr. Fitzgerald believed the premises were dangerous. It was also discovered from a neighbor that there was a problem with people coming into the yard and attempting to go inside the house.

Several days later Mr. Fitzgerald made another inspection of the property. The Fitzgeralds never returned to live on the premises, and they left all their personal property there. They took no steps to repair the damage to the house, and it has remained open to the elements since the fire.

Mr. and Mrs. Fitzgerald obtained proof of loss forms from MFA. However, they did not understand the forms and requested help. They received none. They eventually resorted to using a department store catalog to help them price some of the articles they lost and completed the proof-of-loss forms.

In December of 1980, Mr. and Mrs. Fitzgerald were asked to give a sworn statement to the insurance company. This sworn statement was conducted by two representatives from MFA and consisted of three to four hours of questions each for both Mr. and Mrs. Fitzgerald. The transcribed questions and answers consisted of over 100 pages of typing for each statement.

In a letter dated December 17, 1980, MFA informed Mr. Fitzgerald that because of what they deemed to be material misrepresen-

tation of fact in connection with the presentation of the claim, they were denying coverage under the following provision contained in the policy:

"This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

On January 2, 1981, Mr. Fitzgerald filed his complaint. The case was tried before a jury commencing on August 23, 1983. The following facts were adduced at trial:

Mr. Fitzgerald had sold the house two years before the fire for the sum of $34,000. However, because of a title defect that sale was not completed. An estimate of the costs of repair made almost three years after the fire totaled $38,615. However, Mr. Fitzgerald claimed damage to the dwelling in the amount of $50,400, the full extent of the policy coverage.

Regarding the personal property in the proof of loss, plaintiff included every item of personal property supposedly contained in the dwelling. He admitted at trial that in determining original cost he and his wife, with help from his mother, had used a large department store's catalog and had actually used the replacement cost of the item rather than original cost.

A few of the items listed could not be found after the fire. These items included a remote control console color television set, a stereo set, and several items of jewelry. Where the color set was supposed to have been located, a black and white set was found in its place. Mr. Fitzgerald did not report that the items were missing to either MFA or the police.

During the trial, MFA produced pictures of a washer and dryer, film projector, golf clubs, and fishing poles that were apparently unharmed by the fire. However, the items were listed by Mr. Fitzgerald on the proof-of-loss forms, and he testified that all the items had sustained water damage. He also stated some had sustained smoke damage. No testimony was given as to whether the washer and dryer and the film projector had sustained any electrical damage.

Finally, Mr. Fitzgerald claimed additional living expenses of $10,080, the exact amount of the policy coverage.

■ On the motion of defendant at the close of plaintiff's case, the court directed verdicts in favor of defendant on both counts of the complaint. Mr. Fitzgerald's appeal concerns the directed verdict on

the first count only, and thus he has waived any right to have us consider the issue of the directed verdict on the second count. (87 Ill. 2d R. 341(e)(7).) Accordingly, that portion of the circuit court's judgment is affirmed.

 Mr. Fitzgerald's main contention is that there is evidence supporting the fact that the information be included on his proof of loss was given in good faith and without any intention to misrepresent or defraud. We agree.

MFA moved in this court to strike the aforementioned argument on the grounds that the issue was waived by Mr. Fitzgerald's failure to include it in a post-trial motion (87 Ill. 2d R. 366(b)(2)(iii)). That motion was taken with the case, and we now deny it on the grounds that a plaintiff need not file a post-trial motion in a jury case where the trial court grants a directed verdict for defendant at the close of plaintiff's case. *Keen v. Davis* (1967), 38 Ill. 2d 280, 282, 230 N.E.2d 859, 861.

Directed verdicts are proper in cases in which all of the evidence, when viewed in the aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) After reviewing the record, we do not believe a directed verdict was warranted.

 Testimony at trial tended to show the Fitzgeralds did not knowingly make false representations in an attempt to defraud. Mr. Fitzgerald testified that he did not understand the proof-of-loss forms and that twice he requested help from MFA and had received none. In light of the aforementioned testimony, the court should have let the jury decide.

The materiality of false representations in an application for insurance is a question of fact for the jury. (*Crest v. State Farm Mutual Automobile Insurance Co.* (1974), 20 Ill. App. 3d 382, 385, 313 N.E.2d 679, 682.) The existence of an actual intent to deceive is also ordinarily a fact question. *Ehret v. Loyal Protective Life Insurance Co.* (1969), 112 Ill. App. 2d 289, 294, 251 N.E.2d 101, 104.

 A jury may even find that no fraud or false swearing occurred even when substantial differences exist between the eventual jury award and the original proof-of-loss estimate. (*Marvel Engineering Co. v. Commercial Union Insurance Co.* (1983), 118 Ill. App. 3d 844, 848, 455 N.E.2d 545, 548.) If some effort is displayed at making an honest valuation of a loss, the court should not find fraud or misrepresentation as a matter of law but should submit the question to the jury. See *L & S Enterprises Co. v. Great American Insurance*

*Co.* (7th Cir. 1971), 454 F.2d 457, 460.

Thus it is our opinion that the materiality of the misrepresentation in this case was not established as a matter of law. The trial court should have properly submitted a general verdict to the jury.

In light of our decision that MFA's defense of false swearing and fraud in connection with the plaintiff's claim and the evidence introduced by him was inadequate to warrant a directed verdict, we need not address the issue of whether or not the various coverages of the policy were divisible.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed; this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HARRISON, J., concurring.

JUSTICE KASSERMAN, dissenting:

I am unable to agree with the conclusion of the majority in this cause; therefore, I respectfully dissent.

The majority states that the plaintiff has appealed the court's order in entering a directed verdict in count I of his complaint. The record indicates, however, that the notice of appeal filed by plaintiff indicated that plaintiff was appealing from the court's order as to both counts I and II of his complaint; however, in his brief and argument, plaintiff does not take issue with the directed verdict on the second count of his complaint. Accordingly, as stated by the majority, plaintiff has waived any right to have this court consider the propriety of a directed verdict as to count II (Supreme Court Rule 341(e)(7) (87 Ill. 2d R. 341(e)(7)), and for this reason, that portion of the circuit court's judgment must be affirmed.

Although defendant raised several affirmative defenses, only by establishing its defense of false swearing and fraud in connection with the plaintiff's claim could defendant defeat any recovery under the policy. Therefore, in order to uphold the judgment of the circuit court on the first count, it must appear that the defense of false swearing and fraud in connection with the plaintiff's claim was so clear that, under the rationale of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, it cannot be reversed.

Initially, plaintiff urges that, assuming that this defense was so established, it should not operate to void the entire policy. Plaintiff contends that the various coverages of the policy are severable and that

false swearing or fraud in relation to one should not void the others. This issue was addressed by the court in *Capps v. National Union Fire Insurance Co.* (1925), 318 Ill. 350, 149 N.E. 247, where our supreme court stated:

"[W]here the property is so situated that the risk on one item cannot be affected without affecting the risk on the other items the policy should be regarded as entire and indivisible, but where the property is so situated that the risk on each item is separate and distinct from the others, so that what affects the risk on one item does not affect the risk on the others, the policy should be regarded as severable and divisible." 318 Ill. 350, 355, 149 N.E. 247, 249.

In *Capps v. National Union Fire Insurance Co.,* the court found a similar fire insurance policy which provided for $1,200 of coverage for the dwelling and $1,200 of coverage for the household furnishings to be indivisible and held that a breach of a condition therein by the insured prevented any recovery under the policy. In so holding, the court placed particular emphasis on the fact that the consideration paid by the insured was a single gross premium; that the risk insured against, fire, was the same for both the dwelling and its furnishings; that the breach of condition, in that case the lack of ownership of the dwelling, increased the moral hazard to both the dwelling and its furnishings; and that the policy specifically provided that such a breach would void the entire policy. 318 Ill. 350, 356, 149 N.E. 247, 250.

In the case at bar, the consideration paid by the plaintiff was a single gross premium; the risk insured against, fire, was the same; and the policy specifically provided that fraud or false swearing by the insured in relation to the proof of claim would void the entire policy. Nevertheless, plaintiff contends that, unlike *Capps,* here the alleged breach of condition, which in this case is alleged to be fraud or false swearing by the insured in relation to the proof of claim, does not have a common effect upon the risk for each class of property insured. Plaintiff urges, for example, that a misrepresentation as to the value or existence of personal property does not affect the risk on real property.

The flaw in plaintiff's argument in this regard is that fraud or false swearing by the insured in relation to the proof of loss may also be said to have no effect on the risk on not only the specific property involved but on any of the classes of property, because such a breach in condition can occur only after the loss has occurred. Further, if plaintiff's argument were accepted, this court would create a situation where the same policy could be found to be both divisible and indivisi-

ble based solely upon the type of condition allegedly breached. The policy in question here is different in no substantive manner from the policy examined and found to be indivisible in *Capps*. There is no reason to treat the policy involved in this case any differently.

Plaintiff contends that proof of an increase in risk is necessary to find that the policy was indivisible and that defendant has failed to specifically plead such increase in risk. However, since plaintiff filed no motion to strike or otherwise challenge defendant's affirmative defense, the insufficiency of the pleadings cannot be asserted by plaintiff on appeal. (See *Thilman & Co. v. Esposito* (1980), 87 Ill. App. 3d 289, 295, 408 N.E.2d 1014, 1019; Ill. Rev. Stat. 1983, ch. 110, par. 2—615.) Nevertheless, if it were to be assumed that the claimed error was not waived, it is my opinion that the facts constituting the affirmative defense were plainly set forth in defendant's answer.

Plaintiff's contention on appeal is that there is evidence which supports the fact that the information plaintiff included on his proof of loss was given in good faith and without any intention to misrepresent or defraud and that the court erred in directing a verdict.

It is my conclusion, however, that the evidence, when viewed in its aspect most favorable to the plaintiff (see *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504), does not support a hypothesis of innocent or unintentional misrepresentation in plaintiff's preparation of the proof of loss. The mere fact that there is evidence or inferences therefrom in favor of the plaintiff will not prevent a trial court from directing a verdict for defendant. This so-called "any-evidence rule" was rejected by our supreme court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513. Directed verdicts are proper "in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

The majority refers to *L & S Enterprises Co. v. Great American Insurance Co.* (7th Cir. 1971), 454 F.2d 457, for the proposition that "if some effort is displayed at making an honest evaluation of a loss," the court should not find fraud or misrepresentation as a matter of law but should submit the question to the jury. This may constitute a very generalized statement of the law; however, in the case at bar, the trial judge characterized plaintiff's proof of loss as "just outrageous." Plaintiff's claim included numerous items of personal property which were shown by photographs in evidence to be intact. Plaintiff admitted that he took no effort to determine the extent of

damage to or the salvageability of the property. In this regard, the inclusion in a claim of items which are not damaged has been held to be fraudulent, as has placing a value on items which does not reflect salvage. (*Folk v. National Ben Franklin Insurance Co.* (1976), 45 Ill. App. 3d 595, 598, 359 N.E.2d 1056, 1059.) Furthermore, plaintiff's claim included items that were presumably stolen from the residence rather than damaged by the fire. The cost of other items was inflated. Plaintiff included a claim for a set of decorative scales which he valued at $200. At trial, a receipt for the scales introduced into evidence showed the scales were purchased for only $50. Plaintiff claimed replacement cost as the original cost for other items and then valued those same items at or above this original cost at the time of the loss. Additionally, at the time that it was made, only 14 days after the fire, plaintiff's claim for $10,800 in additional living expenses obviously was not only greatly inflated, it could not have been true. The claim for damages to the dwelling itself exceeded by nearly 50% the amount for which plaintiff had two years earlier sold the dwelling and the land on which it was built. Plaintiff did not obtain an estimate of the damage to the dwelling until nearly three years after the fire. That estimate was substantially less than the amount of damage claimed by plaintiff, and it also included the costs of repairs attributable to the dwelling having been left open to the elements for the three years since the fire.

It is my opinion that the evidence supports only one conclusion, that being that plaintiff submitted an inflated claim with the intent of receiving the total amount of the policy. Subsequently, when suit was filed, plaintiff persisted in again claiming the entire amount. Plaintiff's conduct cannot be excused by characterizing the claim as a mere estimate for purposes of negotiation. As stated by the court in *Lykos v. American Home Insurance Co.* (7th Cir. 1979), 609 F.2d 314, 316 (quoting 14 Couch on Insurance sec. 49:556 (2d ed. 1965)):

> "[A] design on the part of the insured to gain a position of advantage in the settlement of the loss through false representations is a fraudulent design and the making of such representations knowingly for that purpose is an attempt to defraud *** , even though the insured may not have expected or intended ultimately to obtain more than compensation for actual loss."

The conduct required of an insured in submitting a claim for loss was enunciated in *Tenore v. American & Foreign Insurance Co.* (7th Cir., 1958), 256 F.2d 791, 794, *cert. denied* (1958), 358 U.S. 880, 3 L.Ed. 2d 110, 79 S. Ct. 119 (quoting *American Home Fire Assurance Co. v.*

*Juneau Store Co.* (7th Cir. 1935), 78 F.2d 1001, 1003), where the court stated:

> "[T]he insured, if he suffers a loss, must honestly state, under oath, the extent of his loss and give this information to the insurer. He must not make false proofs of loss with intent to defraud the insurer. Although the penalty is heavy and seemingly harsh, it is one way of stopping the presentation of false, fictitious or inflated claims."

Although the penalty of voiding the entire policy is heavy and seemingly harsh, under circumstances similar to those here, it has been applied by our courts. (See *Folk v. National Ben Franklin Insurance Co.* (1976), 45 Ill. App. 3d 595, 359 N.E.2d 1056; *Kavooras v. Insurance Co. of Illinois* (1912), 167 Ill. App. 220.) In view of the evidence in this case, such a result is appropriate, and I would therefore affirm the judgment of the circuit court of St. Clair County.