ELAINE M. PAULAN, Plaintiff-Appellant, v. JEFFREY JETT, Defendant-Appellee.

Second District   No. 2—89—0171

Opinion filed October 26, 1989.

Donald L. Bertelle and Peter R. Behnke, both of Chicago, for appellant.

Edward M. O'Donnell, of O'Donnell & Murtaugh, of Lombard, for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Elaine M. Paulan, was injured when she collided, while on foot, with a truck driven by the defendant, Jeffrey Jett. The plaintiff sued defendant in the circuit court of Du Page County to recover for the medical expenses, pain and suffering, and the disability she claims were the result of the accident. The jury returned a verdict of $300 in the plaintiff's favor for reasonable medical expenses, but awarded the plaintiff nothing for either her pain and suffering or her disability. The jury also found that the plaintiff's contributory negligence was a 50% cause of the accident. The plaintiff filed a motion for a new trial on the ground that the jury's verdict was inadequate as a matter of law because it ignored a proved element of damages. The trial court denied the motion, and the plaintiff now appeals. We affirm.

On October 15, 1983, both the plaintiff and the defendant were students at Hinsdale South High School, and both attended the school's homecoming football game that day. The parties agree that a collision between the plaintiff and the defendant's truck took place that afternoon and that the plaintiff suffered injury as a result. The accident occurred in the parking lot adjacent to the stadium either shortly before or after the end of the football game. The defendant was driving his truck through the parking lot, and the plaintiff was stopped to talk to her friends. At some point, the plaintiff turned to walk away from her friends and collided with the defendant's truck. She struck and shattered the truck's side-view mirror and was thrown to the ground.

At trial, the parties presented conflicting testimony regarding the cause of the accident. The plaintiff contended that she was standing in a pedestrian walkway when she turned and the side-view mirror of the defendant's truck struck her. She testified that the accident occurred before the end of the game and the traffic in the parking lot was light. Two witnesses substantially corroborated the plaintiff's version of events and added that the truck was traveling between 20 and 30 miles per hour just before the accident occurred.

The defendant testified that the accident occurred in bumper-to-bumper traffic after the game had ended. He stated that his truck was stopped when the plaintiff, who was running with her head turned behind her, ran into the truck. Two witnesses also substantially corroborated the defendant's version of events.

The parties also disagree as to the extent of the injuries suffered by the plaintiff. The plaintiff testified that, although she attended the

homecoming festivities later that evening, she was in pain and her arm and knee were greatly swollen. She went to the emergency room at Palos Community Hospital the next morning and was prescribed pain-killing medication and fitted with a brace to immobilize her knee. In the 10 days following the accident, the plaintiff's family doctor, Dr. Thomas Driscoll, twice examined her. He continued the treatment prescribed at the hospital emergency room. The plaintiff stayed out of school for one week after the accident and wore the knee brace for two months thereafter.

The plaintiff's last visit with Dr. Driscoll concerning her knee took place on October 25, 1983. For almost 19 months after this date the plaintiff did not seek any medical care for her knee. During this time, the plaintiff testified, she was forced to give up a number of activities that she had previously enjoyed because of the condition of her injured knee. The condition of the knee, the plaintiff said, made it difficult for her to jump, and the knee could not withstand strenuous activities. She could not continue as a starting player on her high school's varsity volleyball team, and she also had to forgo playing any intramural high school sports. The knee continued to bother the plaintiff after she went away to college. She complained of stiffness and a grinding feeling in the knee when she engaged in certain activities. Playing volleyball, walking for a long distance or up stairs, and riding a bicycle would all tend to cause her knee to swell or ache.

On May 23, 1985, Dr. Driscoll referred the plaintiff to Dr. Thomas Regan for an examination of the knee. Dr. Regan X-rayed the knee and instructed the plaintiff on certain rehabilitative exercises. The following summer, in August 1986, Dr. Regan again examined the plaintiff. At about this time, the plaintiff decided to consult another physician about the possibility of surgery on her knee. She was referred to Dr. Albert Bunta, an orthopedic surgeon, who X-rayed the plaintiff's knee and examined the X rays taken previously by Dr. Regan. Dr. Bunta determined that the plaintiff's knee was not in need of surgery. He found no signs of either crepitation, which is a grating within the knee, or of chondromalacia, a softening or roughening of the joint cartilage.

Again the next year, in August 1987, the plaintiff decided to see another doctor because she was dissatisfied with the recovery of her knee. Dr. Michael Orth, a board-certified orthopedic surgeon, examined the plaintiff and determined that the knee demonstrated both crepitation and chondromalacia. In his evidence deposition read at trial, Dr. Orth testified that the knee's condition was consistent with the plaintiff's complaints of pain. He told the plaintiff that if she

could not live with the discomfort of the knee, then arthroscopic surgery was an option for her to consider. The defendant, however, introduced into evidence at trial the evidence deposition of Dr. Bunta in which he stated that the plaintiff's knee did not demonstrate crepitation or chondromalacia and that no surgery was warranted.

The plaintiff introduced evidence at trial to show that her medical expenses consisted of: $201.20 paid for her initial treatment at the emergency room; $77 paid to Dr. Driscoll for the examinations conducted a few days after the accident; and a total of $390 for the examinations by Dr. Regan, Dr. Bunta and Dr. Orth dating back to 1985. The parties stipulated that the arthroscopic surgery discussed by Dr. Orth would cost $2,500.

The jury returned a verdict awarding the plaintiff $300 for the reasonable medical expenses the plaintiff incurred as a result of the accident. The jury awarded the plaintiff nothing for either the pain and suffering or the disability which the plaintiff claims were the result of the injury. The jury also found that the plaintiff's contributory negligence was a 50% cause of the accident. After the trial court entered judgment on the verdict, the plaintiff filed a post-trial motion seeking to vacate the judgment entered and seeking a new trial on the issue of damages only. The basis of the motion was the plaintiff's assertion that the verdict was inadequate as a matter of law in that it failed to reflect the evidence offered to show the pain and suffering of the plaintiff. The trial court denied the motion, and the plaintiff now appeals that ruling.

■■ The plaintiff's position on appeal is essentially the same as below, namely, that the jury's verdict is inadequate because the jury ignored a proved element of damages. The amount of a verdict is generally within the discretion of the jury. A reviewing court may order a new trial only if the damages awarded are manifestly inadequate, if it is clear that proved elements of damages have been ignored, or if the amount awarded bears no reasonable relationship to the plaintiff's loss. *Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 407.

The plaintiff argues that the jury's verdict disregards the evidence presented at trial showing the pain and suffering that she suffered as a result of the accident. We believe, however, that the jury's verdict may well have been the result of its own assessment of the strength of the plaintiff's proof and the credibility of the testimony presented at trial. The defendant admitted that the plaintiff was injured in the accident in the high school parking lot, but he did not concede that the injury was as severe as the plaintiff claimed. The

defendant read into evidence the deposition of Dr. Bunta, who stated that the plaintiff's knee did not demonstrate the kind of injury that Dr. Orth had found. This conflict between the statements of the two doctors regarding the extent of the injury is precisely the kind of factual question that should be resolved by the jury.

■ Moreover, it was for the jury to assess the credibility of the plaintiff's complaint of pain in her knee and to determine what damages, if any, ought to be awarded. The plaintiff attended her homecoming festivities after the accident, and she did not seek medical treatment until the morning after. As for the continuing complaints of pain, the plaintiff admitted that, after the initial examination by her family doctor, she did not seek medical treatment for her knee again until some 19 months later. This delay provides a sufficient basis for a jury to conclude reasonably that the plaintiff failed to prove any significant pain and suffering resulting from the accident. That the jury reached such a conclusion here is supported by the fact that it awarded the plaintiff a sum ($300) approximately equal to the cost of only her initial medical treatment ($278.20), but did not award an amount sufficient to cover medical expenses incurred long thereafter.

Two cases cited by the defendant support our conclusion. In *Williams v. McCallister* (1978), 60 Ill. App 3d 635, the defendant was involved in an automobile accident with the plaintiff. The plaintiff brought suit claiming that the accident caused her to suffer whiplash. The defendant contested the plaintiff's injury and presented the testimony of an expert witness at trial to controvert the extent of the plaintiff's claimed injury. The court held that because the extent of the injury was the subject of conflicting evidence, the jury's verdict would not be disturbed. (60 Ill. App. 3d at 638-39.) In *Ford v. Baker* (1978), 61 Ill. App. 3d 45, the plaintiff claimed special damages of $537.99 for a spinal injury and also sought to recover for her pain and suffering. The jury's award of only $600 was not set aside on appeal because it was shown that the plaintiff's medical treatment consisted of only nine visits to her doctor over a 15-month period. (61 Ill. App. 3d at 48.) Here, the plaintiff only sought medical treatment twice in a period of 19 months.

The plaintiff cites a number of cases in which a jury's verdict was held inadequate as a matter of law for failure to consider the pain and suffering caused by the underlying injury. These cases are distinguishable from the one at bar because the injuries which beset the victims in those cases were much more severe and the existence of pain and suffering could be more easily inferred by the court. In *Giardino v. Fierke* (1987), 160 Ill. App. 3d 648, this court held that a jury's ver-

dict of slightly less than the amount of the uncontroverted special damages was inadequate as a matter of law. In that case the court inferred pain and suffering from an injury resulting in a nine-day hospital stay, numerous treatments for back pain, partial hearing loss and vertigo. More important, the court in *Giardino v. Fierke* specifically noted that the defendant offered no expert witness to contradict the testimony of the plaintiff's physician. (160 Ill. App. 3d at 651-52.) The defendant in the instant case, on the other hand, did just that.

The plaintiff also refers us to *Schranz v. Halley* (1984), 128 Ill. App. 3d 125, and *Stamat v. Merry* (1979), 78 Ill. App. 3d 445, but these cases are also distinguishable from the one at bar. In *Schranz v. Halley*, the jury awarded the plaintiff the exact amount of her medical expenses, but the appellate court reversed for failure of the verdict to account for the plaintiff's obvious pain and suffering. The plaintiff in that case suffered a skull fracture, a concussion and cerebral contusions, and she was hospitalized for a week. (*Schranz*, 128 Ill. App. 3d at 127.) Similarly, in *Stamat v. Merry* the plaintiff had extensive facial fractures, which had to be repaired by permanently wiring his face, and suffered permanently from double vision and a partial loss of feeling in his face. (*Stamat*, 78 Ill. App. 3d at 448.) Clearly, the extent of the injuries in both these cases provided a sufficient basis for the reviewing court to infer the existence of compensable pain and suffering. Here we cannot say that the plaintiff's injury rises to such a level, and so we are reluctant to disregard the jury's assessment of the evidence presented.

■ The evidence of the extent of the damages suffered by the plaintiff was conflicting, and the resolution of this conflict was properly within the province of the jury. We therefore affirm the judgment of the circuit court of Du Page County.

Affirmed.

DUNN and REINHARD, JJ., concur.