MIKE KUMOREK *et al.*, Plaintiffs-Appellants, v. VADA MOYERS, Defendant-Appellee.

Fifth District No. 5—89—0165

Opinion filed September 5, 1990.

CHAPMAN, J., dissenting.

Ronald R. Eckiss, of Harris & Lambert, of Marion, for appellants.

Walden E. Morris, of Jelliffe, Ferrell & Morris, of Harrisburg, for appellee.

JUSTICE RARICK delivered the opinion of the court:

While driving home from church on May 13, 1984, plaintiffs' vehicle was struck from behind by a car driven by the defendant Vada Moyers. Plaintiffs filed a complaint which prayed for judgment against Moyers for personal injuries, pain and suffering, medical expenses, damage to their car and costs of suit. Following a trial, the court entered judgment on the jury's verdict against Vada Moyers and in favor of Diana Kumorek for the reasonable expense of necessary medical care, treatment and services rendered, in the sum of $2,026.50. Judgment was entered on the verdict in favor of Mike Kumorek for the reasonable expense of necessary medical care, treatment and services, in the sum of $1,912.50. Plaintiffs appeal from the trial court's judgment order and the court's order denying their post-trial motion. On appeal plaintiffs raise as the sole issue the adequacy of the verdict and whether they should be granted a new trial on the issue of damages only.

The collision from which this cause of action arose occurred on Illinois State Route 34, in Rosiclare, Illinois. The plaintiffs were northbound on Route 34. Mike Kumorek was driving and Diana was riding in the front passenger seat. Their two children were in the backseat. Just prior to the collision the parties were traveling in a procession of five cars. The Kumoreks occupied the third car in the line of traffic, followed by the fourth vehicle in line, followed by Moyers' car. Mike Kumorek testified at trial that the first car in line stopped to allow southbound traffic to pass before completing a left turn. The vehicle immediately in front of the Kumoreks' vehicle came to a complete stop behind the first car. Mike Kumorek testified that he in turn came to a complete stop. While the first three vehicles were stopping, the fourth car in line proceeded to make a right turn. After this car completed its turn, Moyers, driving the fifth vehicle in the procession, collided with the Kumoreks' vehicle.

■ Although testimony was heard with regard to the damage plaintiffs sustained to their automobile and with regard to Mike Kumorek's lost wages, plaintiffs did not address the jury's award with regard to these elements of damages in their post-trial motion, nor have they addressed these in their brief on appeal. We, therefore, will not consider whether the jury's verdict was inconsistent with regard to the elements of lost wages and damage to plaintiffs' car. See *Fitzgerald v. MFA Mutual Insurance Co.* (1985), 134 Ill. App. 3d 1007, 1009-10, 481 N.E.2d 754, 756.

With regard to the personal injuries sustained by the plaintiffs, Diana Kumorek testified that at the time of the collision she felt a

stabbing pain through her neck. Shortly after the accident she went home, took some Tylenol and rested for the remainder of the day. Mrs. Kumorek testified that later that evening the pain had become so severe that she went to the county hospital where she was given medication and sent home. The following two days she stayed in bed. On Tuesday Mrs. Kumorek consulted with Dr. Leach, a chiropractor. Dr. Leach referred the patient to Dr. Woodward who, upon examining her, admitted her to the hospital to conduct further tests. Mrs. Kumorek testified that while in the hospital she underwent a CAT scan and was put in traction. She testified that during her hospital stay she experienced a great deal of pain in her head, neck, shoulder and arm. After being released from the hospital she returned to Dr. Leach for treatment. She saw Dr. Leach daily through the month of June, until she was able to return to what she termed "a mild everyday routine."

Dr. Leach's testimony confirmed that he treated Diana Kumorek for her ailments throughout 1984. He testified that he treated her approximately 23 to 24 times in 1985, and in 1986 he provided treatments to her 24 times. In 1987 he only saw her once and that was for the purpose of taking X rays. His treatment included adjustments, soft tissue manipulation and physical therapy consisting of ultrasound and electrogalvanic stimulation. He related that the patient had responded well under treatment and that her range of motion in the cervical spine had increased drastically. He testified, however, that as he told Mrs. Kumorek in July of 1984, he felt that she had reached her maximum medical improvement under his care and that her condition had improved as much as it was going to other than treating the symptoms of pain and loss of range of motion.

Mike Kumorek also testified as to the personal injuries he sustained in the May 1984 collision. He testified that at the time of the collision he felt his neck pop. The palms of his hands rolled up because just prior to impact he braced the steering wheel. He testified that later that day a dull headache at the base of his skull developed. The following day he consulted a doctor at the hospital emergency room, who prescribed warm pads for his neck and medication. Approximately three days after the accident, Mike Kumorek went to see Dr. Leach because his headache pain had increased. Mr. Kumorek testified that at the time he could barely move his neck in either direction. Kumorek then described the pain he experienced: "[I]t would cause a severe headache. When I say severe, it would go back to the point to where just like someone was standing on top of me bearing down." Dr. Leach referred him to a specialist who referred Kumorek

back to Dr. Leach to pursue moderate treatment consisting of applying heat pads, soft tissue manipulation, and electrogalvanic ultrasound. He continued with treatment throughout June of 1984.

Dr. Leach also testified that he treated Mike Kumorek prior to the May 1984 accident for complaints the patient had with regard to the same areas of the neck and shoulder. Dr. Leach stated that Mike Kumorek told him that he had been involved in an auto accident when he was 19 years old, 11 years prior to the accident of May 1984. Mr. Kumorek advised Dr. Leach that as a result of the prior auto accident, his neck became stiff and painful three or four times a year. Dr. Leach testified that Mr. Kumorek's complaints regarding his neck and shoulder became more serious after the May 1984 accident, and that it was Dr. Leach's opinion that the May 1984 accident aggravated Mr. Kumorek's condition.

Mike Kumorek further testified to the injury he sustained to his right hand. After the May 1984 accident he periodically experienced a tingling sensation in the pads of his fingers, which he had never felt before. He testified that after the accident he was working as a mechanic, and that several times when he attempted to do his work, such as grasping a hammer, his hand would open by itself. He testified that he had no control over this reaction. He stated that he would wake up in the middle of the night and his hand would hurt from the finger tips all the way back to the elbow badly enough that he could not sleep.

When his symptoms did not improve, Mr. Kumorek saw Dr. James Durham, who referred him to Larry Laird, a physical therapist, for a nerve conductive study. After the study was completed, Mr. Kumorek was sent to Dr. Barrow for wrist surgery. Outpatient surgery was conducted wherein Dr. Barrow excised a segment of the transverse ligament across the wrist.

Dr. Barrow referred to Mr. Kumorek's condition as carpal tunnel syndrome. He testified that healing of a nerve injury is at the rate of approximately one-sixteenth of an inch per day. Numbness in the area of the injury is to be expected for approximately four to six months. Dr. Barrow testified that in his opinion the tenderness over the nerve in the area of Mike Kumorek's injury is a permanent condition, and that when he uses the wrist excessively he will notice it somewhat. Dr. Barrow related, however, that approximately one year after the surgery, when he last saw Mike Kumorek, most of Mr. Kumorek's symptoms and complaints had ceased. Mike Kumorek's testimony confirmed that he no longer has any problems with his hand.

Dr. Leach's bill for services rendered to Diana Kumorek was ad-

mitted into evidence. The jury's award of $2,026.50 is $112 less than the total bill of $2,188.50. It appears from the record that the $112 difference represents the cost of the March 1987 X rays taken for the purpose of allowing Dr. Leach to prepare for his deposition.

Dr. Leach's bill with respect to Mike Kumorek totalled $2,024.50. Once again, the jury's verdict of $1,912.50 shows a $112 difference from the total bill. From the record it appears the jury did not compensate Mike Kumorek for the X rays taken in March of 1987, which cost $112. The jury's verdict also did not take into account the bill submitted by Dr. Barrow for $370 and the $315.42 hospital bill for Mike Kumorek's surgery.

Plaintiffs argue on appeal that the jury's verdicts, awarding plaintiffs compensation for Dr. Leach's bills, but not awarding plaintiffs any damages for pain, suffering and disability, are inconsistent. We agree.

 The decision as to whether a new trial should be granted rests with the sound discretion of the trial court, and its ruling will not be reversed absent an abuse of that discretion. (*Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038, 1039, 495 N.E.2d 141, 142; *Ford v. Baker* (1978), 61 Ill. App. 3d 45, 46, 377 N.E.2d 853, 854.) As a general rule, a new trial in a personal injury action will not be granted on the ground that the damages awarded by the jury are too small. (See *Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 647, 432 N.E.2d 1267, 1272.) This is particularly true where no complaint is made as to the jury instructions or admissibility of evidence, and the trial was otherwise error free. (See *Ford*, 61 Ill. App. 3d at 46, 377 N.E.2d at 854; *Haleem v. Onate* (1966), 71 Ill. App. 2d 457, 460, 219 N.E.2d 94, 96.) When the jury, however, renders a verdict and the amount of damages awarded, in viewing the record as a whole, is palpably inadequate or against the manifest weight of the evidence or when the jury clearly has disregarded a proven element of damages, then justice requires that such a verdict be set aside and a new trial ordered. (*Hinnen*, 144 Ill. App. 3d at 1039-40, 495 N.E.2d at 143; *Schranz v. Halley* (1984), 128 Ill. App. 3d 125, 126, 469 N.E.2d 1389, 1390.) Here we have just such a situation. Diana and Mike Kumorek were compensated for the full amount of their expenses for medical treatment, minus the deposition X-ray costs, but were awarded nothing for pain and suffering. This we cannot understand. If the jury believed plaintiffs had no compensable pain and suffering, its award of pain-related expenses was wholly unwarranted and contrary to the manifest weight of the evidence. Conversely, if the jury believed their pain was sufficiently serious to warrant extended medical treatment to alleviate

such pain and suffering, its failure to award compensation for that pain and suffering means simply the jury disregarded a proven element of damages. (*Hinnen*, 144 Ill. App. 3d at 1046, 495 N.E.2d at 147; *Schranz*, 128 Ill. App. 3d at 127, 469 N.E.2d at 1390.) Clearly the jury's verdicts are irreconcilably inconsistent. Had the jury awarded a small amount for pain and suffering in each situation, then the situation might be different. We could then arguably acknowledge that the jury recognized such damages but chose not to believe all of the plaintiffs' testimony. Where we are faced with zero dollar awards when damages are clearly evident, however, we have no choice but to declare that the verdicts are inconsistent. And, where verdicts returned in the same action are legally inconsistent, such verdicts must be set aside and a new trial granted. *Wottowa Insurance Agency, Inc. v. Bock* (1984), 104 Ill. 2d 311, 316, 472 N.E.2d 411, 413; *Hinnen*, 144 Ill. App. 3d at 1046, 495 N.E.2d at 147.

For the foregoing reasons, we reverse the judgment of the circuit court of Hardin County and remand this cause for a new trial on the issue of damages.

Reversed and remanded with directions.

WELCH, J., concurs.

JUSTICE CHAPMAN, dissenting:
I respectfully dissent from the majority opinion. First, the majority fails to address the issue raised by the plaintiffs of whether the jury's verdict is inconsistent with regard to its award for disability. I cannot agree with plaintiffs' suggestion that their proof is wholly uncontested as to this issue.

The evidence shows that plaintiffs' vehicle sustained minor damage and was not repaired. The Kumoreks did in fact drive the car immediately following the accident. Although Diana Kumorek testified that she stayed in bed for a few days after the accident, and was hospitalized for four days as a result of the accident, scant evidence was presented showing that she could not perform her daily duties as a housewife. She testified that in June of 1984 her physical well-being was such that she could start lifting small items. She stated that at that time she was unable to vacuum, but could make a bed "as long as I watched how I bent, how I raised up. The treatments were keeping the muscles relaxed enough that I was able to go back to a mild routine." At the time of the trial Ms. Kumorek was working as a secretary. She did not claim to have been impaired in her ability to do

her job or to have missed work because of her injuries. In light of the evidence, I believe the jury's failure to compensate her for disability may have been the result of its assessment of plaintiff's proof and the credibility of the testimony presented at trial. The question of what evidence to believe and what evidence to reject is a decision for the trier of fact, whose determination will not be upset on review unless manifestly erroneous. (*Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 725, 504 N.E.2d 781, 787.) The resolution of the conflict here was properly within the jury's province.

As for the disability claimed to have been suffered by Mike Kumorek, he testified that he was unemployed at the time of the accident. About one week following the accident he took a job as a maintenance man, working one day a week. He testified that approximately three weeks after the accident he helped his father roof his house, and at that time he first noticed his hand begin to tingle and go numb. Prior to the surgery on his wrist, Mr. Kumorek took a job with a construction firm. He testified that as a result of the surgery he was unable to return to work for eight weeks. Dr. Barrow, the orthopedic surgeon who performed the surgery on his wrist, testified that in the several hundred surgeries he has performed relating to carpal tunnel syndrome, very few resulted from automobile accidents. He conceded that it ordinarily takes more than five or six months to develop the type of scar tissue that Mr. Kumorek had, and that it is possible that Kumorek had the scar tissue before the accident. Dr. Barrow testified that if he had not been given the patient's history, as related to him by Mike Kumorek, in his opinion it would be likely that Mr. Kumorek had the scar tissue before the auto accident. Again, in view of the conflicting evidence as to whether or not the carpal tunnel syndrome was a result of the auto accident, I would decline to disturb the decision of the jury in rendering its verdict as to this element of damages. *Hall*, 152 Ill. App. 3d at 725, 504 N.E.2d at 787.

Likewise, the evidence as to the disability suffered by Mike Kumorek as a result of his neck injury is conflicting. Mike Kumorek testified that in performing his duties at work, the pain in his neck would cause severe headaches to the point where he would have to stop whatever he was doing and "see if the headache would go away." In January of 1986 Mr. Kumorek took a job as a farmhand. At the time of trial in June of 1987, he was still employed in this occupation. He testified that in his work as a farmhand, he has a headache at least every day. Mr. Kumorek denied that he was absent from work because of these headaches, but testified that he is generally able to

control or stop them with Tylenol. When asked whether he experiences these headaches after he has been working on a tractor looking over his shoulder for extended periods, Mr. Kumorek testified, "Well, after 10 to 15, 12 hours a day looking behind you, you're bound to have a headache." There was no evidence presented showing that Mike Kumorek had ever missed work or that he was incapable of performing his work as a result of his neck injury. Based on the foregoing, I would not disturb the jury's verdict with regard to its award for disability.

The majority bases its decision to reverse on what it believes is an inconsistent verdict where the jury awarded compensation for medical expenses yet no award was given for pain and suffering. In order to determine whether the jury verdict on the amount of damages is inadequate, we must consider the record as a whole. (*Ford v. Baker* (1978), 61 Ill. App. 3d 45, 47, 377 N.E.2d 853, 854.) It is only where the jury had no reasonable basis for its verdict and the award is obviously inadequate that the reviewing court will set aside the verdict. *Ford*, 61 Ill. App. 3d at 48, 377 N.E.2d at 855.

The jury by its verdict acknowledged that plaintiffs received injuries as a result of the accident. The jury heard testimony of the plaintiffs as to their physical infirmities before the accident and the state of health of the plaintiffs after the accident. On cross-examination Ms. Kumorek testified that prior to the accident she had seen Dr. Felts, a chiropractor, for a pinched nerve in her neck. Prior to the accident Ms. Kumorek was also treated for sinus headaches by Dr. Leach. When asked whether she had been involved in any accidents prior to the one at bar, Ms. Kumorek testified that in 1981 she injured her left side when she fell out the door of their trailer onto a concrete block. She was hospitalized and treated for the injuries she sustained in that accident. Counsel for the defense then referred Ms. Kumorek to her deposition testimony of 1984 wherein, when asked what her complaints were after falling out of the trailer, she was quoted as saying, "I believe it was my right side." On further inquiry, Ms. Kumorek testified that she did not recall which side it was that she injured in her fall. The jury heard Dr. Leach testify that although "some sort of trauma" caused Ms. Kumorek's condition of ill-being, his opinion that the auto accident was the direct cause of her condition was based on the history provided to him by Diana Kumorek.

Evidence was presented as to Diana Kumorek's post-occurrence activities. She testified that in June of 1984 she was able to return to a "mild everyday routine." The jury heard her testify that in her current secretarial job if she overdoes lifting or types for an extended

period of time she develops a severe headache. She also testified that since the accident she has had a third child. After he was born she had to learn how to lift and carry him in a different way than the way she was accustomed to because it put a strain on her neck and right shoulder.

The jury heard Dr. Leach testify that he treated Mike Kumorek prior to the accident for complaints Kumorek had regarding the same areas of the neck and shoulder. The jury was also aware that Mike Kumorek had been in an auto accident 11 years prior to the one at issue and that he suffered neck pain and stiffness three or four times a year as a result of that accident. It was Dr. Leach's opinion that the 1984 accident aggravated Kumorek's condition. The jury heard Mike Kumorek testify that in his work as a farmhand it is necessary for him to look over his shoulder for extended periods of time and that he experiences a headache everyday.

The jury was entitled to weigh the credibility and general demeanor of the plaintiffs, including their subjective manifestations of pain. (*Beckmeyer v. Alcala* (1985), 135 Ill. App. 3d 166, 174, 481 N.E.2d 893, 898; *Paulan v. Jett* (1989), 190 Ill. App. 3d 497, 501, 545 N.E.2d 1377, 1380.) Although plaintiffs testified that they suffered pain as a result of the accident, the jury was entitled to weigh the testimony. (*Beckmeyer*, 135 Ill. App. 3d at 175, 481 N.E.2d at 899.) The jury may have found it determinative that the plaintiffs had prior histories of pain similar to the pain plaintiffs testified they experienced after the accident. The jury may have determined that the medical expenses incurred by the parties, which were awarded, were a direct result of the accident. In light of the conflicting testimony, however, it is my opinion that we cannot say that the jury would have acted improperly in finding that the pain and suffering complained of were the result of the other incidents plaintiffs had experienced.

The majority cites *Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038, 495 N.E.2d 141, in support of its argument that the jury's verdict was inconsistent. In *Hinnen* the court ordered a new trial where the verdicts awarded the accident victim compensation for the full amount of her expenses for pain medication and physical therapy, but awarded nothing for pain and suffering. *Hinnen* is distinguished from the instant case in that in *Hinnen* there was no evidence presented that the plaintiff had a prior history of the pain she described as experiencing as a result of her 1979 accident. Although the plaintiff in that case was involved in two other accidents which may have resulted in similar pain and suffering as was experienced as a result of

the 1979 accident, those occurred three and four years after the 1979 accident.

In this case both plaintiffs had suffered prior injuries to the same areas of their bodies. It may be that the jury felt that plaintiffs were entitled to recover for the medical expenses incurred as a result of this incident, but that they also concluded that the plaintiffs had not sustained their burden of proof regarding their complaints of pain. In other words, in *Hinnen* the plaintiff was entitled to some award for pain and suffering for at least the period of time between the accident complained of and the first subsequent accident because there was no evidence of any other cause of the pain. Here, however, the jury could have concluded that the prior injuries were the cause of plaintiffs' pain.

The evidence of the damages suffered by plaintiffs was conflicting. Resolution of this conflict was properly within the province of the jury, and I would not disturb the jury's finding. I find no abuse of discretion in the trial court's denial of a new trial and would affirm the judgment of the circuit court.