JANICE GRIFFIN, Plaintiff-Appellant, v. MARLIN L. ROGERS *et al.*, Defendants-Appellees.

Fourth District   No. 4—88—0410

Opinion filed December 28, 1988.

Darrel F. Parish and Robert M. Owen, both of Owen, Roberts, Parish, Castleman & Owen, Ltd., of Decatur, for appellant.

James V. Mancuso, Jr., of Decatur, for appellees.

JUSTICE GREEN delivered the opinion of the court:

Plaintiff Janice Griffin brought this action against defendants Marlin L. Rogers and his employer, Bankers Software and Supply, Inc. (Bankers Software), to recover damages which resulted when actions of Rogers allegedly caused an automobile collision between Griffin and a third party. On March 29, 1988, following a jury trial in the circuit court of Macon County, the court entered judgment on the jury verdict in favor of plaintiff and against the defendants. The jury awarded plaintiff $365 as the present cash value of the "reasonable expenses of her medical care" and $110 for the value of her lost wages but gave her no award for pain and suffering, disability, or aggravation of a preexisting condition resulting from her injuries.

Plaintiff appeals, contending (1) the verdict was against the mani-

fest weight of the evidence; (2) the verdict awarding her medical expenses and lost wages but not pain and suffering was inconsistent; and (3) the verdict resulted from sympathy for the corporate defendant. We affirm.

Marlin Rogers testified at trial that (1) on October 23, 1985, he was employed by Bankers Software as a service repairman; (2) on that date, he was in Decatur on business for Bankers Software; (3) he was driving in the second lane from the left on a one-way street when he made a left turn into a parking lot; (4) as he made the turn, he heard the sound of brakes being applied and saw plaintiff's car, in the left lane, being struck from the rear; and (5) he was later given a traffic ticket for "Improper Lane Change."

James Grant testified that he was involved in an automobile collision with plaintiff on October 23, 1985. He said (1) he was driving in the far left-hand lane of a one-way street; (2) the driver of the car in front of him, plaintiff, suddenly braked her car, and he was unable to avoid a collision with her; (3) after the collision, he talked to plaintiff, and she told him she was not injured; (4) her car had no visible damage; (5) he would estimate his speed at the time he braked at about 20 miles per hour and plaintiff's speed at about five miles per hour; and (6) he skidded about 10 or 15 feet and was driving about 10 miles per hour when his car struck hers.

Plaintiff testified at trial and related the events surrounding the collision substantially as had James Grant and Marlin Rogers. She indicated that she told police and Grant she did not think she was injured at the time, and she did not have any outward signs of injury. She said, however, later that day, she started feeling a tightness in her neck. She said that on October 25, she went to see her family physician, Dennis Rademacher, who ordered X rays and prescribed medication. She then described her subsequent visits to Dr. Rademacher and her visits to neurosurgeons Hubbard and Elble. She said she saw Hubbard twice and Elble once. She said Hubbard advised her to place hot towels on her neck and shoulders, and Dr. Elble prescribed a medication to help her sleep.

On cross-examination, plaintiff testified (1) she experienced numbness and tingling during the first 60 days following the accident and told Rademacher about these sensations; (2) her neck, shoulder, and back pain were not gone within six months of the accident; (3) the last time she saw a physician for conditions related to this accident was in March of 1986; (4) her activities were not limited in any way, and in 1987 and 1988, she was participating, on recommendation of her physician, at least weekly in both racquetball and volleyball; (5)

she had continued to work a 40-hour workweek after the accident, was promoted, and received appropriate pay raises; (6) she was able to travel to Chicago and Florida without difficulty; and (7) she continued to shop and do housework. In addition, she said her automobile sustained only minor scratches in the collision, she did not obtain an estimate of damages, and she has never had the vehicle repaired as a result of the accident.

Plaintiff was impeached or discredited in part on several points: (1) her physician testified she voiced no complaints of numbness or tingling at any time; (2) her physician also testified he did not prescribe vigorous activities such as racquetball and volleyball and that such activities would aggravate her preexisting arthritis; and (3) in her verified answers to interrogatories, she indicated she had pain for just six months after the accident and had no permanent injury. She was also discredited by inconsistencies and contradictions between her testimony relating to the amount of pain she was having and her ability to participate in various activities and that of her husband.

Dennis Rademacher, plaintiff's family physician, testified (1) he saw plaintiff in his office two days after the accident, on October 25, 1985; (2) based upon her history and physical examination, she had muscle spasm, muscle strain, a preexisting permanent arthritic condition in her neck, and degenerative disc disease; (3) the preexisting condition would cause pain even in the absence of trauma; (4) he prescribed a medication for pain and a muscle relaxant; (5) he saw plaintiff one week after her first visit, made the same diagnosis, and continued the medication; (6) he then referred her to a neurosurgeon for evaluation; (7) he saw plaintiff in his office in December of 1985, and, at that time, she was still having occasional neck pain; (8) in January of 1986, he treated plaintiff for an upper respiratory infection and found she had tenderness in her neck and shoulder; and (9) the pain she was suffering up to the date of his deposition in March 1988 was related to the automobile accident.

Rademacher was discredited in part on cross-examination when he admitted his diagnosis of muscle strain and cervical degenerative disc disease was exactly the same diagnosis he had made following an automobile accident plaintiff had had in November 1984 and he had said, at that time, that the disease could have been caused by an injury prior to November 1984. Rademacher testified the degenerative disc disease is a progressive condition which could cause pain and limited neck motion. He also said there was no permanent deficit or defect due to the accident.

■ Plaintiff argues the verdict was against the manifest weight

of the evidence and was irreconcilably inconsistent. She maintains the jury could not consistently have awarded her nothing for her pain and suffering while compensating her in full for her medical expenses, including pain-relieving medicine, and wages lost while she was being examined by the three physicians.

Plaintiff relies on *Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038, 495 N.E.2d 141, in support of her claim that the inconsistent verdicts must be reversed. There, a jury returned an itemized verdict awarding plaintiff $2,500 for medical expenses incurred as a result of her injuries but nothing for disability, pain and suffering, or lost wages. Plaintiff had documented a total of $2,047.22 in expenses for medical care relating to her injuries, including doctor fees, X rays, physical therapy and medicine, and $1,343.82 in lost wages. The court found no problem with the jury's award of nothing for pain and suffering and disability, because the evidence was insufficient to require or support an economic evaluation thereof. Yet, it found the jury's compensation for pain medication and physical therapy to be irreconcilably inconsistent with a finding that plaintiff had suffered no compensable pain. The court indicated the award of pain-related expenses was wholly unwarranted and contrary to the manifest weight of the evidence.

Here, however, unlike in *Hinnen*, the record does not clearly show that the $365 awarded for plaintiff's medical expenses included those for medication for pain. The evidence showed that plaintiff's tending physician did prescribe such medication for plaintiff, but plaintiff was not able to remember what the cost was for her physician or medication. Plaintiff's husband testified that his employer had paid certain benefits for plaintiff and claimed $365 reimbursement for paying those expenses. The testimony did not indicate whether payments for medication were included in the $365 figure. Plaintiff's husband described the medical benefits he received as "fairly good." He did not say they provided complete coverage for plaintiff's claimed injuries. The jury could reasonably have concluded no reimbursement was given for her expenses for medicine. An exhibit introduced into evidence listed plaintiff's hours of employment lost and also showed $48 spent for medical expenses. Nothing in the exhibit indicates the $48 was included in the $365 benefits testified to by the husband. In the face of this, at best, uncertain record, we can make no conclusive determination that the jury intended to compensate plaintiff for the expenses of pain-relieving medicine. Accordingly, we cannot find the verdicts to be inconsistent.

■■ It is the function of the jury to determine the credibility of

the witnesses and to assess the weight to be accorded their testimony. A court of review will not interfere with the discretion of the jury in its assessment of damages except where they are "palpably inadequate or it is clear that a proven element of damages has been ignored." *Lazzaro v. Garrett* (1968), 100 Ill. App. 2d 452, 456, 242 N.E.2d 59, 61.

The evidence here showed a low-speed impact of two vehicles which caused minimal damage, a number of inconsistencies between the testimony of plaintiff, her husband, and her physician, and no permanent injury. Her physician indicated that all of her complaints could be the result of a preexisting condition. It is obvious the jury chose not to believe that any physical problems plaintiff might have had resulted from the impact. The verdict was fully supported by the evidence and will not be set aside.

Moreover, we do not believe the verdict was affected by sympathy for the corporate defendant as plaintiff argues.

Lester Wood, the owner of defendant Bankers Software, testified at trial that he was the owner of the corporation, that Bankers Software provided service for computers it sold, and that he, his wife, and a salesman were the only employees. Plaintiff did not object to Wood's testimony but subsequently, after the court had recessed and the jury was removed from the courtroom, moved to strike the testimony as being irrelevant and prejudicial. The motion was denied.

Plaintiff argues the jury's verdict was influenced by an inference that Wood would have to pay the award himself. We disagree.

In *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 515 N.E.2d 157, the court indicated questions concerning the size of defendant's plant were merely introductory and did not prejudice defendant. In *McKasson v. Zimmer Manufacturing Co.* (1973), 12 Ill. App. 3d 429, 299 N.E.2d 38, cited by plaintiff, the court found no abuse of discretion where the trial court overruled an objection to questions regarding plaintiff's wife and the number of children he had. The court concluded that although such evidence was irrelevant in a suit for personal injuries, the evidence was not unduly emphasized so as to arouse sympathies of the jury. *McKasson*, 12 Ill. App. 3d at 439, 299 N.E.2d at 45.

In *Pagel v. Yates* (1984), 128 Ill. App. 3d 897, 471 N.E.2d 946, also cited by plaintiffs, this court found no reversible error occurred where inadmissible hearsay evidence was introduced but did not prejudice the defendant or materially affect the outcome. The court found that evidence defendant had substituted one horse for another prior to the sale of the first horse was erroneously admitted, but the other

evidence at trial overwhelmingly proved plaintiff had received the wrong horse.

Here, although the testimony showed little relevance, it was a brief introductory statement, was not unduly emphasized or mentioned during closing argument, and did not substantially affect the outcome of the trial. Any error in the admission of this testimony was harmless.

For the reasons stated, the decision of the trial court is affirmed.

Affirmed.

LUND and SPITZ, JJ., concur.