SCOTT URBAN, Plaintiff-Appellant, v. WILLIAM W. ZEIGLER, Defendant-Appellee.

Second District   No. 2—93—0776

Opinion filed June 1, 1994.

Dan Walker, Jr., of Cesario & Walker, of Hinsdale, for appellant.

William W. Zeigler, of Connelly & Schroeder, of Geneva, and Therese S. Seeley, of Cassiday, Schade & Gloor, of Wheaton, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiff, Scott Urban, filed a complaint against the defendant, William W. Zeigler, seeking damages for personal injuries sustained in an automobile collision. A jury awarded the plaintiff $9,800 for medical expenses. No damages were awarded for aggravation of a preexisting condition, disability and disfigurement, pain and suffering, or lost wages. On appeal, the plaintiff seeks a new trial on the issue of damages on the basis that the jury's verdict was irreconcilably inconsistent and against the manifest weight of the evidence. For the following reasons, we affirm in part, reverse in part, and remand.

A collision between the parties occurred on May 22, 1988, at approximately 1 p.m., at the intersection of Coral Road and Maple

Road in McHenry County, Illinois. Coral Road is a two-lane road running east and west with one lane in each direction. Traffic traveling east and west on Coral Road is not required to stop at the Maple Road intersection as there is no stop sign. Traffic traveling north and south on Maple Road must observe a stop sign at the Maple Road intersection.

Immediately prior to the collision, the plaintiff was traveling west on Coral Road, and the defendant was traveling north on Maple Road. As the plaintiff arrived at the intersection, he observed the defendant's vehicle pull away from the stop sign and in front of his vehicle. The plaintiff forcefully applied the brakes, skidded, and "violently" collided with the defendant's vehicle. The defendant's vehicle spun around and struck the rear of the plaintiff's vehicle. The plaintiff's vehicle slid into a ditch on the north side of Maple Road just west of the intersection and struck a street sign.

The plaintiff testified that his right knee hit the steering column when his body was thrown forward during the collision. The plaintiff's mother arrived at the scene and transported the plaintiff to the emergency room of Woodstock Memorial Hospital. The plaintiff was given crutches and a leg immobilizer which extended from his right hip to his ankle with an open area for his knee.

The plaintiff consulted with Dr. Steven Rochell, an orthopedic surgeon, three days after the collision. Dr. Rochell prescribed ice packs and advised the plaintiff to take aspirin and engage in stretching exercises. Although the plaintiff testified that he continued to experience pain in his knee during the summer of 1988, he worked at Walgreen as a stock person and cashier for the entire summer. He did not see Dr. Rochell or any other physician during that time.

The plaintiff testified that the condition of his knee deteriorated during the winter of 1988 and spring of 1989, as the knee became more painful and began to crack, snap, and pop. Nevertheless, the plaintiff continued part-time employment and engaged in physical education activities at school. It was not until April 1989 that the plaintiff resumed treatment with Dr. Rochell. However, he discontinued physical therapy at Woodstock Memorial Hospital after three weeks.

On June 29, 1989, Dr. Rochell performed arthroscopic surgery to the plaintiff's right knee. From August to October 1989, the plaintiff engaged in physical therapy at Woodstock Memorial Hospital approximately three times per week. He resumed therapy in January 1990 because the condition of his knee had become worse. Although the plaintiff admitted that the condition of his knee improved and the pain subsided since the surgery, he testified at trial that he

continues to experience pain in his right knee when he goes up and down stairs or walks long distances. However, at the time of trial, the plaintiff had not consulted with a physician for the condition of his knee since February 1990.

Although the plaintiff testified on direct examination that he did not experience pain in his right knee prior to the collision, he admitted on cross-examination that he saw a physician in June and November 1987 due to a swollen condition in his right knee. The condition was later identified as right patellar tendinitis, or inflammation of the tendon which connects the patella to the front of the shin.

Dr. Michael Gonzalez, a board-certified physician in the field of physical medicine and rehabilitation, testified that he examined the plaintiff and reviewed his medical records. The surgical records reported the presence of patellar subluxation, meaning that the patella had been moving outside of its normal range, but no other structural abnormalities. Because of this fact, Dr. Gonzalez opined that prior to the collision the plaintiff suffered from "some degree" of patellar malalignment syndrome, wherein the patella is not in proper alignment. Because the plaintiff did not complain of pain in his right knee prior to the collision, Dr. Gonzalez opined that the collision aggravated the plaintiff's preexisting condition of patellar malalignment syndrome. The collision damaged the front of the knee, which, over a number of months, produced a scarring of the lateral retinaculum, thereby causing the patella to shift to the lateral side of the knee. The plaintiff's condition eventually led to chondromalacia patella, or softening of the cartilage surrounding the patella, which causes crepitus, or a cracking sound that occurs when the joint moves improperly. The arthroscopic surgery released the scarred lateral retinacula and returned the patella to its proper alignment. Dr. Gonzalez testified that his examination of the plaintiff subsequent to his arthroscopic surgery indicated no signs of crepitus, patellar malalignment syndrome, or chondromalacia patella.

Dr. Robert Hall, an orthopedic surgeon, testified for the defendant. After performing several tests on the plaintiff and taking his medical history, Dr. Hall concluded that the plaintiff's surgery was not related to the collision. Dr. Hall opined that the plaintiff was suffering from chondromalacia patella in both knees prior to the collision and that the surgery was performed to correct the preexisting condition. Contrary to the testimony of Dr. Gonzalez that the collision produced a scarring of lateral retinaculum, Dr. Hall testified that the records from the arthroscopy did not note the existence of scar tissue in the patellar area.

The jury returned a verdict in favor of the plaintiff and awarded damages of $9,800 for reasonable past and future medical expenses. The itemized verdict form illustrated that no damages were awarded for aggravation of a preexisting condition, disability, pain and suffering, or lost wages. Judgment was entered on the verdict, and the plaintiff appealed.

The plaintiff contends that the jury's verdict awarding damages for medical expenses and no other element of damages is irreconcilably inconsistent and against the manifest weight of the evidence. Thus, the plaintiff seeks a new trial solely on the issue of damages.

The amount of a verdict is within the discretion of the jury. (*Elliott v. Koch* (1990), 200 Ill. App. 3d 1, 10.) A reviewing court will not order a new trial on the issue of damages unless the damage award is against the manifest weight of the evidence. (*Williams v. Commonwealth Edison Co.* (1992), 232 Ill. App. 3d 85, 92.) A verdict may be found contrary to the manifest weight of the evidence when the damages awarded are palpably inadequate, when the jury disregards a proven element of damages, or when the amount of the award bears no reasonable relationship to the plaintiff's loss, thereby illustrating that the jury made a compromise between the guilt of the defendant and the damages sustained by the plaintiff. *Healy v. Bearco Management, Inc.* (1991), 216 Ill. App. 3d 945, 954.

Many prior cases have addressed whether a verdict awarding damages for medical expenses and no other element of damages is irreconcilably inconsistent. In *Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038 (Jones, J., dissenting), the plaintiff brought an action against the defendant for personal injuries sustained in an automobile collision. The jury awarded damages for past medical expenses, but did not award damages for lost wages, disability, or pain and suffering. Since the jury compensated the plaintiff for the *full amount* of her expenses for pain medication and physical therapy, a majority of the appellate court held that the jury's verdict which awarded nothing for pain and suffering was irreconcilably inconsistent and remanded the cause for a new trial on the issue of damages. The court reasoned as follows:

> "If the jury believed that plaintiff had no compensable pain and suffering, its award of pain-related expenses was wholly unwarranted and contrary to the manifest weight of the evidence. Conversely, if it believed that plaintiff's pain and suffering were sufficiently serious to warrant expenditures for pain medication and physical therapy, its failure to award her compensation for that pain and suffering means that it disregarded a proven element of damages." *Hinnen*, 144 Ill. App. 3d at 1046.

Several cases subsequent to *Hinnen* have embraced the view that a damage award which includes pain-related medical expenses without an award for pain and suffering, disability and disfigurement, or aggravation of a preexisting condition is irreconcilably inconsistent. (*Healy*, 216 Ill. App. 3d 945; *Rice v. Merchants National Bank* (1991), 213 Ill. App. 3d 790; *Kumorek v. Moyers* (1990), 203 Ill. App. 3d 908.) In *Healy*, a jury awarded the plaintiff $120,767.31. Although the verdict was unitemized, the amount reflected the full amount of her medical bills, which included expenses for pain medication and physical therapy. The damage award illustrated that the jury believed the plaintiff's injury was serious enough to require substantial pain medication and physical therapy. Relying on *Hinnen*, this court set aside the verdict and remanded the cause for a new trial on the issue of damages on the basis that the verdict illustrates that the jury disregarded a proven element of damages. *Healy*, 216 Ill. App. 3d at 954-55.

Likewise, in *Rice*, this court reversed a jury's award of $48,000 for medical expenses and nothing for disability and disfigurement, pain and suffering, or lost earnings. We rejected the defendant's argument that the jury's award for more damages in medical expenses than the plaintiff actually incurred revealed that the jury took more into account than the medical bills. Since the itemized verdict form contained a space for pain and suffering damages, and none were awarded, the court concluded that it is merely speculation that any excess damages for medical expenses was intended to compensate the plaintiff for some other element of damages. The cause was remanded to the trial court for a new trial on the issue of damages. *Rice*, 213 Ill. App. 3d 790.

The defendant counters *Hinnen* and its progeny by citing cases which upheld a jury's verdict awarding damages for medical expenses but not for pain and suffering. (*Craigmiles v. Egan* (1993), 248 Ill. App. 3d 911; *Elliott v. Koch* (1990), 200 Ill. App. 3d 1; *Paulan v. Jett* (1989), 190 Ill. App. 3d 497; *Griffin v. Rogers* (1988), 177 Ill. App. 3d 690.) In *Paulan*, the jury awarded the plaintiff the sum of $300 for reasonable medical expenses but awarded nothing for pain and suffering or disability. Likewise, in *Griffin*, the jury awarded the plaintiff $365 for medical expenses, $110 for lost wages, and nothing for pain and suffering, disability, or aggravation of a preexisting condition. Despite the plaintiffs' urging that the verdicts which awarded damages for pain-related expenses and nothing for pain and suffering were irreconcilably inconsistent, the verdicts were upheld in both cases. In both *Paulan* and *Griffin*, the nature and extent of the plaintiffs' injuries were questionable. The plaintiffs did not seek

immediate treatment, and there was conflicting testimony from various physicians concerning the severity of the plaintiffs' alleged injuries. The courts reasoned that it was the province of the jury to assess the credibility of the witnesses, including the plaintiffs' complaints on pain, and determine what damages, if any, should be awarded. Since the amounts awarded for medical expenses encompassed an initial doctor's visit and nothing more, the courts determined that the verdicts were fully supported by the evidence.

The defendant compares the instant case to *Craigmiles v. Egan* (1993), 248 Ill. App. 3d 911, due to evidence of the plaintiff's preexisting condition. In *Craigmiles*, the jury initially awarded a verdict of $9,150, itemized as $5,000 for aggravation of a preexisting injury, $3,750 for medical expenses, $400 for lost earnings, and nothing for pain and suffering or disability and disfigurement. (*Craigmiles*, 248 Ill. App. 3d at 920.) The trial court granted a new trial on the issue of damages, wherein the jury awarded the sum of $50,158.37. On appeal, the court determined that the trial court abused its discretion in granting the new trial on the issue of damages and reinstated the initial damage award of $9,150. Citing *Paulan* and *Griffin*, the *Craigmiles* court reasoned that the initial damage award was not against the manifest weight of the evidence because there was sufficient evidence from which the jury could have concluded that the plaintiff did not suffer pain and suffering arising out of the collision. Since the plaintiff suffered from a preexisting condition, the *Craigmiles* court reasoned that the plaintiff did not endure any pain and suffering which she would not have suffered in addition to her preexisting condition. *Craigmiles*, 248 Ill. App. 3d at 928.

*Craigmiles* is factually inapposite from the present case due to the nature of the damages awarded. In *Craigmiles*, the appellate court reinstated a damage award for medical expenses, lost wages, and aggravation of a preexisting condition. In the instant case, however, the jury awarded damages for medical expenses, and no *other element of damages*. We agree with the rationale of *Paulan* and *Griffin* that a damage award for medical expenses and no other element is not irreconcilably inconsistent when the evidence of the plaintiff's injury is disputed and the amount of the award includes only an initial doctor's visit and nothing more.

However, we question the rationale of *Craigmiles*. In our view, a damage award for medical expenses and aggravation of a preexisting condition without an award for pain and suffering is irreconcilably inconsistent. If there was sufficient evidence to support an award of damages for *aggravation* of a preexisting condition, it logically follows that there was sufficient evidence of the plaintiff's increased pain and

suffering due to the aggravated injury. "Aggravation" is defined as any circumstance attending the commission of a tort which increases its enormity or adds to its injurious consequences, but which is above and beyond the essential constituents of the tort itself. (Black's Law Dictionary 65 (6th ed. 1990).) By definition, if a preexisting condition is aggravated, it has worsened and is accompanied by increased pain and/or suffering. Thus, an award for medical expenses and aggravation of a preexisting condition without an award for pain and suffering is irreconcilably inconsistent.

In this case, the plaintiff bumped his right knee on the steering column during the collision. The main issue surrounds the severity of the injury and whether the damages he seeks were proximately caused by the collision. As in *Paulan* and *Griffin*, the severity of the plaintiff's injuries is questionable. This was not a case such as *Wade v. Rich* (1993), 249 Ill. App. 3d 581 (Lewis, J., dissenting), wherein the evidence of the plaintiff's severe pain and suffering arising out of multiple dog bites to the face and neck was unrebutted. Although the plaintiff in this case testified that he experienced "severe" and "throbbing" pain in his right knee, he was able to work, go to school, and engage in physical education activities. Like the plaintiffs in *Paulan* and *Griffin*, the plaintiff in this case did not consult with a physician on a regular basis subsequent to the collision.

However, this case differs from *Paulan*, *Griffin*, and *Craigmiles* due to the nature of the damages awarded. The plaintiff sought a total of $10,600 in medical bills incurred and an unspecified amount for future medical expenses. The jury awarded a total of $9,800 for medical expenses. Like *Hinnen*, *Healy*, and *Rice*, the plaintiff was compensated for medical bills which included an award for pain-related medication and physical therapy. Contrary to the plaintiffs in *Paulan* and *Griffin*, who were compensated for the approximate costs of their initial medical treatment and nothing more, the award of $9,800 for medical expenses in this case encompassed the plaintiff's ongoing treatment, arthroscopic surgery, and subsequent physical therapy.

It is speculative to assume that the award for medical expenses did not include the arthroscopy but did include future medical expenses. If the jury believed the plaintiff's injury arising out of the collision was sufficiently serious to require an arthroscopy, then the failure to award damages for pain and suffering or for aggravation of a preexisting condition reflects that the jury disregarded a proven element of damages. Alternatively, if the jury awarded no damages for the arthroscopy but awarded future medical expenses, the verdict was against the manifest weight of the evidence because there was

absolutely no evidence of the plaintiff's future medical expenses subsequent to his cessation of medical treatment related to the arthroscopy.

The plaintiff in this case only requests a new trial on the issue of damages. The defendant, however, contends that a new trial on the issues of both liability and damages should be granted, since facts do not support the jury's finding that the plaintiff was not contributorily negligent.

■ It is appropriate to grant a request for a new trial solely on the issue of damages when (1) the jury's verdict on liability is amply supported by the evidence; (2) questions of liability and damages are so separate and distinct that the defendant will not be treated unfairly by limiting trial to the damage issues; and (3) the record does not suggest that the jury reached a compromise verdict or that the error which resulted in the inadequate damage award also affected the verdict on the issue of liability. *Wade*, 249 Ill. App. 3d at 587; *Healy*, 216 Ill. App. 3d at 955.

■ In this case, the jury assessed the defendant's liability at 100%, since it found the plaintiff was not guilty of contributory negligence. A plaintiff is guilty of contributory negligence when he fails to exercise that degree of care which a reasonably prudent person would have exercised for his own safety under like conditions and when that failure is a proximate cause of the plaintiff's injuries. (*Healy*, 216 Ill. App. 3d at 955.) Drivers on a preferential road, such as the plaintiff, do not have an absolute right-of-way to proceed into obvious danger. (*Guy v. Steurer* (1992), 239 Ill. App. 3d 304, 308.) Rather, such drivers must observe due care in approaching and crossing intersections and drive as a prudent person would to avoid a collision when danger is discovered or should have been discovered by the exercise of reasonable care. *Haight v. Aldridge Electric Co.* (1991), 215 Ill. App. 3d 353, 364.

In this case, the unrebutted testimony established that the defendant pulled away from the stop sign and in front of the plaintiff's vehicle. Although the plaintiff testified that he observed the defendant's vehicle 150 feet away from the intersection, he was traveling at a high rate of speed, within the speed limits, and had no reason to believe the defendant would move into the intersection when his vehicle was approaching. Although the plaintiff did not sound his horn or leave skid marks, the evidence is sufficient to support a finding that the plaintiff exercised reasonable care in approaching the intersection and that the plaintiff was not contributorily negligent. We are satisfied that the verdict on the issue of liability was supported by the evidence. Further, the questions of liability and

damages in this case are distinct, such that a new trial on the issue of damages would not be unfair to the defendant, and there is nothing to suggest the jury reached a compromised verdict.

For these reasons, we affirm the judgment of the circuit court of McHenry County on the issue of liability. We reverse the judgment awarding damages for medical expenses and no other element of damages and remand the cause to the trial court for a new trial on all damage issues, including medical expenses.

Affirmed in part; reversed in part and remanded.

INGLIS, P.J., and PECCARELLI, J., concur.