RICHARD D. KNIGHT *et al.*, Plaintiffs-Appellants, v. THOMAS H. LORD, Defendant-Appellee.

Fourth District    No. 4—94—0665

Opinion filed March 31, 1995.

582

David R. Moore, of Follmer & Moore, of Urbana, for appellants.

Robert A. Hoffman, of Thomas, Mamer & Haughey, of Champaign, for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Richard Knight appeals from the trial court's denial of his motion for a new trial following a jury verdict awarding him $10,000 damages against defendant Thomas Lord. We affirm.

In November 1987, plaintiff was injured in a chain reaction rear-end collision. A truck driven by defendant started the chain reaction. Plaintiff filed suit against defendant for personal injuries caused by the collision. Defendant conceded liability, so the trial proceeded on the issue of damages only.

The trial occurred in May 1994. Prior to opening arguments, defendant objected to the admission of portions of the evidence deposition testimony of two doctors, Dr. Rak and Dr. Burkle, regarding the permanency and prognosis of plaintiff's injuries. Dr. Rak last examined plaintiff in 1987, and Dr. Burkle last examined plaintiff in January 1992. The trial court sustained defendant's objections on the basis Illinois law requires opinions on permanency or prognosis be preceded by a recent examination.

Defendant also objected to the admission of portions of Dr. Rak's evidence deposition testimony stating his opinion on the nature and extent of plaintiff's injuries. The opinions to which defendant objected were opinions based in part on records of Dr. Burkle and a Dr. Helfrich, which records Dr. Rak had not used in treating plaintiff and had not seen until the day of the deposition. The trial court sustained the objection on the basis Dr. Rak's testimony of this nature should have been disclosed under Supreme Court Rule 220 (134 Ill. 2d R. 220), which requires the disclosure of expert witnesses. The trial then proceeded with the testimony of witnesses, the relevant parts of which will be brought out as necessary during the discussion of the issues.

At the close of evidence, defendant objected to plaintiff's tender of a nonpattern jury instruction which stated, in its entirety, the following: "The loss of the enjoyment of life is a relevant consideration in determining damages for pain and suffering." The trial court sustained the objection on the basis it would not be helpful to the jury.

The jury returned a $10,000 verdict in favor of plaintiff, itemized as follows: $2,000 for "[t]he aggravation of any pre-existing ailment or condition," $3,000 for the "[r]easonable expense of necessary medical care, treatment and services rendered," and $5,000 for "[t]he present cash value of the reasonable expenses of medical care, treatment and services certain to be received in the future." The jury awarded zero dollars for each of the following: "[t]he disability resulting from the injury," "[t]he disfigurement resulting from the injury," "[t]he pain and suffering experienced," and "[t]he pain and suffering reasonably certain to be experienced in the future."

Plaintiff now appeals the denial of his post-trial motion for new trial, asserting the trial court erred by failing to allow portions of the testimony of Dr. Rak and Dr. Burkle, as well as plaintiff's tendered jury instruction. Plaintiff also asserts the jury's verdict was against the manifest weight of evidence because the jury verdict was inconsistent, manifestly inadequate, and ignored a proved element of damages.

■ Plaintiff initially asserts the trial court erred in granting defendant's objections to the evidence deposition testimony because defendant had waived any objections by failing to timely object to the deposition testimony prior to trial. The record is to the contrary. During the deposition of Dr. Rak, defendant continuously objected to questioning regarding the permanency and prognosis of plaintiff's condition on the basis the opinions were not based on a recent examination of plaintiff. Defendant also objected to this same testimony by Dr. Rak on the basis Dr. Rak's opinion was beyond the scope of Dr. Rak's diagnosis and treatment and therefore constituted an expert opinion which should have been disclosed. In regard to Dr. Burkle's testimony concerning the permanency and prognosis of plaintiff's injuries, Dr. Burkle's deposition was taken in March 1992, only two months after his examination of plaintiff. However, by the time of trial, 2 1/2 years had elapsed, causing Dr. Burkle's deposition opinion to become stale. Defendant did not have the lapse of time as a basis for the objection during the deposition so he did not waive it by failing to object. Further, the defendant did object to the deposition prior to trial. The docket entry dated January 3, 1994, states "[o]ver objection plaintiff's motion to admit evidence deposition of Drs. Rak and

Burkle is granted." The record is silent on what grounds the objections were made. Any doubts caused by an insufficient record will be resolved against the appellant. (*People v. Sechler* (1994), 262 Ill. App. 3d 226, 227, 634 N.E.2d 1283, 1284.) Therefore, we presume at least one of the grounds on which defendant objected was that no recent examination had been performed on plaintiff.

■ Plaintiff next asserts defendant waived objections to the evidence depositions because defendant failed to comply with local Rule 2.1(b) of the Rules of Practice of the Circuit Court as adopted by the Sixth Judicial Circuit, which states: "[w]ith the exception of emergency matters or by leave of court, no motion shall be heard unless previously allotted for hearing on the court's calendar." (6th Jud. Cir. R. 2.1(b) (1992).) This argument is without merit. Plaintiff brought local Rule 2.1(b) to the attention of the trial court when defendant moved to strike portions of the evidence deposition testimony. Nevertheless, the trial court allowed defendant to proceed with his objections. Therefore, defendant received leave of court to have his motion heard, and defendant complied with local Rule 2.1(b). Defendant did not waive objections to the evidence deposition testimony.

■ We turn now to the merits of the issues concerning the evidence deposition testimony. The admissibility of evidence at trial is a matter within the sound discretion of the trial court, and that court's decision will not be overturned on appeal absent a clear abuse of discretion. (*People v. Illgen* (1991), 145 Ill. 2d 353, 364, 583 N.E.2d 515, 519.) In Illinois, a physician may not testify at trial regarding his opinion of a patient's prognosis unless it was based on a recent examination. *Marchese v. Vincelette* (1994), 261 Ill. App. 3d 520, 525, 633 N.E.2d 877, 880-81, citing *Wilson v. Chicago Transit Authority* (1988), 126 Ill. 2d 171, 176, 533 N.E.2d 894, 897; *Henricks v. Nyberg, Inc.* (1976), 41 Ill. App. 3d 25, 28, 353 N.E.2d 273, 276 (holding an examination given three years prior to trial was not "recent," so an opinion formed at the time of the examination could not represent an opinion at the time of trial).

> "The purpose underlying this rule is that only opinions held at the time of trial can be considered by the trier of fact (*Henricks*, 41 Ill. App. 3d at 28), and '[a] present opinion based upon an examination a number of years prior to trial cannot represent an opinion at the time of trial.' " *Marchese*, 261 Ill. App. 3d at 525, 633 N.E.2d at 881, quoting *Wilson v. Chicago Transit Authority* (1987), 159 Ill. App. 3d 1043, 1044, 513 N.E.2d 443, 444.

The parties agree on these general principles. However, plaintiff asserts the particular issue here is controlled by *Thurmond v. Monroe* (1992), 235 Ill. App. 3d 281, 291, 601 N.E.2d 1048, 1055, *aff'd* (1994),

159 Ill. 2d 240, 636 N.E.2d 544. There, the court held although an opinion may not be given regarding *prognosis* without a recent examination, a physician may give an opinion regarding the "nature, extent and *permanency*" of injuries. (Emphasis added.) (*Thurmond*, 235 Ill. App. 3d at 291, 601 N.E.2d at 1055.) Plaintiff also cites *Courtney v. Allied Filter Engineering, Inc.* (1989), 181 Ill. App. 3d 222, 231, 536 N.E.2d 952, 959, which distinguished *Henricks* and allowed testimony regarding the permanency of a condition where the physician had not examined the plaintiff for four years prior to trial, but had treated him for two years prior to that. Plaintiff contends here, although Dr. Rak and Dr. Burkle had not examined him for at least $2^1/_2$ years prior to trial, the doctors were going to testify only as to the *permanency* of his injuries, not his *prognosis*, and therefore the trial court erred by excluding their testimony. We disagree.

*Marchese* addressed this same argument concerning a distinction between prognosis and permanency. After considering the definitions of "permanency" and "prognosis," the court rejected *Thurmond* and *Courtney* and concluded "whether or not a disease or condition is permanent in nature is an aspect of a doctor's prognosis. *** Thus, under the rule of *Henricks*, we reject as unsound any distinction between expert testimony regarding permanency and prognosis." (*Marchese*, 261 Ill. App. 3d at 526, 633 N.E.2d at 881.) *Marchese* noted this view was supported by case law as well. (*Marchese*, 261 Ill. App. 3d at 526, 633 N.E.2d at 881; see also *Phelps v. Chicago Transit Authority* (1991), 224 Ill. App. 3d 229, 232, 586 N.E.2d 352, 354 ("a treating physician may give opinion testimony regarding the permanency of a patient's injuries, providing a recent examination has been performed"); *Wilson*, 126 Ill. 2d 171, 533 N.E.2d 894; *Henricks*, 41 Ill. App. 3d 25, 353 N.E.2d 273.) We agree permanency is an aspect of prognosis, and any attempt to distinguish the two conceptually is unsound. Moreover, we also agree with *Marchese* a rule requiring testimony regarding permanency be preceded by a recent examination is well grounded in case law. *Marchese*, 261 Ill. App. 3d at 525, 633 N.E.2d at 881; *Phelps*, 224 Ill. App. 3d at 232, 586 N.E.2d at 354; *Wilson*, 126 Ill. 2d at 176, 533 N.E.2d at 897 ("a treating physician may not give an opinion on the permanency of injuries without a recent examination"), citing *Henricks*, 41 Ill. App. 3d 25, 353 N.E.2d 273.

Plaintiff then asserts this rule was followed here because the doctors' opinions regarding the permanency and prognosis of his injuries were formulated after a recent examination of him. It is true the opinions in the evidence depositions may have been formed after an examination recent to the *depositions*. However, no examination had been performed recent to the *trial*, and therefore, the doctors could

not give their opinions at the time of trial. Nor could the doctors' opinions at the time of the depositions be presented at the trial because opinions $2^{1}/2$ years old cannot represent opinions at the time of the trial.

■ Plaintiff, however, citing *Marchese*, asserts the recency of the examination goes only to the weight of the doctor's opinion, not its admissibility. This argument is without merit. *Marchese* declared only that the trial court did not abuse its discretion in deciding 15 months was "recent," considering the time elapsed in *Henricks* was more (three years), and considering the doctor's opinion had been reached after a course of treatment extending over a period of years. In short, the recency of an examination does go to its admissibility. Only after an examination is considered "recent," and thereby admissible, does the recency of the examination go to the weight of the doctor's opinion. Here, the most recent examination of plaintiff was 28 months prior to trial. This is closer to the three-year lapse in *Henricks* than the 15-month interval in *Marchese*. The trial court did not abuse its discretion in declaring the examinations were not "recent," nor in ruling the doctor's opinions regarding the permanency of plaintiff's injuries were inadmissible under the rule in *Wilson, Henricks*, and *Marchese*.

■ Plaintiff next argues the trial court erred by striking portions of Dr. Rak's testimony because Dr. Rak was not disclosed pursuant to Supreme Court Rule 220. Rule 220(b)(1) states: "the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party." (134 Ill. 2d R. 220(b)(1).) The purpose of the rule is to eliminate surprise expert testimony. (*Boatmen's National Bank v. Martin* (1993), 155 Ill. 2d 305, 323, 614 N.E.2d 1194, 1203.) Under Rule 220, treating physicians generally are not subject to disclosure: "Because of a treating physician's relationship to the case, no surprise could be reasonably generated by his expert opinion ***." (*Boatmen's*, 155 Ill. 2d at 323, 614 N.E.2d at 1203.)

> " '[T]he opinions of treating physicians are similar to those of occurrence witnesses who testify, not because they were retained in the expectation they might develop and give a particular opinion on a disputed issue at trial, but because they witnessed or participated in the transactions or events that are part of the subject matter of the litigation.' " (*Boatmen's*, 155 Ill. 2d at 322, 614 N.E.2d at 1202, quoting *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 234-35, 529 N.E.2d 525, 528-29.)

Thus, a treating physician will not need to be disclosed under Rule 220 if "the expert's related opinion could be reasonably expected to

be formed through the expert's involvement in the underlying facts" giving rise to the litigation. (*Boatmen's*, 155 Ill. 2d at 323, 614 N.E.2d at 1203; see also *Kniceley v. Migala* (1993), 272 Ill. App. 3d 427, 433-36, 626 N.E.2d 238, 242-44.) Conversely, then, a treating physician will need to be disclosed if that physician is going to provide a "litigation-associated" opinion which could not be expected to be developed through that physician's treatment of plaintiff's injuries. (*Boatmen's*, 155 Ill. 2d at 324-25, 614 N.E.2d at 1203-04.) In *Boatmen's*, the court ruled the treating physician there did not need to be disclosed because his involvement in treating the plaintiff was extensive enough so he could have been expected to form an opinion as to the cause of the plaintiff's condition and the appropriateness of her previous treatment. Further, the treating physician testified "he had formed his opinions when he first examined [the plaintiff] based on his knowledge, experience[,] and [the plaintiff's] history." *Boatmen's*, 155 Ill. 2d at 324, 614 N.E.2d at 1203.

■ Here, Dr. Rak admitted he treated plaintiff primarily *prior to* plaintiff's November car accident. Dr. Rak further admitted he had only *one* appointment with plaintiff after his November car accident, but plaintiff never even mentioned the accident. Thus, Dr. Rak's involvement with the treatment of plaintiff for any injuries caused by the November car accident was negligible. Dr. Rak's opinions regarding the nature, extent, and prognosis of plaintiff's injuries resulting from the November car accident could not be expected to be based on Dr. Rak's treatment of these injuries because Dr. Rak was not even aware of the November accident during the single appointment he had with plaintiff after that accident. Indeed, Dr. Rak admitted he based his opinions on medical reports he had never seen prior to the day of the deposition. Dr. Rak did not form his opinions regarding injuries caused by the November accident "for the purposes of his treatment of the patient" (*Boatmen's*, 155 Ill. 2d at 325, 614 N.E.2d at 1204), but for the purposes of litigation. Plaintiff thus was required to disclose Dr. Rak under Rule 220, but he did not. The trial court did not err in striking portions of Dr. Rak's testimony in this regard.

■ Plaintiff next argues the trial court erred by refusing to offer plaintiff's tendered jury instruction. Supreme Court Rule 239(a) states:

"Whenever Illinois Jury Pattern Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law. Whenever IPI does not contain an instruc-

tion on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial, and free from argument." (134 Ill. 2d R. 239(a).)

Here, the parties do not dispute the instruction actually given to the jury was an IPI instruction and *correctly* stated the law. However, plaintiff contends the given instruction *inadequately* stated the law, and therefore his proposed instruction was proper. Defendant concedes the proposed instruction was simple, brief, impartial, and free from argument, but counters by asserting not only was the given instruction adequate, but plaintiff's proposed instruction was inaccurate and confusing because "loss of enjoyment of life" overlaps with other damage categories.

Illinois courts recently have clarified the loss of enjoyment of life is an element of damages. *Fetzer v. Wood* (1991), 211 Ill. App. 3d 70, 82, 569 N.E.2d 1237, 1244-45, noted case law appeared to state loss of enjoyment of life was a *component*, rather than a separate element, of compensable damages. Several other cases have, without discussing the issue, assumed loss of enjoyment of life is a component specifically of "disability" damages. (See *Holston v. Sisters of the Third Order of St. Francis* (1993), 247 Ill. App. 3d 985, 1005, 618 N.E.2d 334, 347 (declaring disability damages "logically include[ ] the loss of enjoyment of life"); *Martin v. Cain* (1991), 219 Ill. App. 3d 110, 115, 578 N.E.2d 1161, 1164 (holding jury ignored proved element of damages where jury awarded zero dollars for disability, yet evidence clearly showed "plaintiff's lifestyle had been changed," in that plaintiff could no longer jog, lift weights, participate in sports, mow the lawn, perform housework, or work as a beauty operator); *Sands v. Glass* (1994), 267 Ill. App. 3d 45, 50, 640 N.E.2d 996, 999 (holding jury ignored proved element of damages where jury awarded zero dollars for disability, yet evidence clearly showed "plaintiff's lifestyle changed" because plaintiff could no longer walk, swim, or hold her daughter in her lap).) Recently, the court in *Smith v. City of Evanston* (1994), 260 Ill. App. 3d 925, 631 N.E.2d 1269, declared not only was the loss of enjoyment of life a component of disability damages,

> "disability and loss of a normal life cannot both be included as separate elements of damages. We are persuaded, however, by commentators, including Graham, who argue that 'loss of a normal life' is less likely than the term 'disability' to be misunderstood and to lead to duplication of damages awarded for other categories. Therefore, we hold that the trial court should instruct the jury to award the plaintiff, if she proves that the accident caused such loss, damages for 'loss of a normal life,' defined as plaintiff's

'[d]iminished ability to enjoy life that the plaintiff has experienced' [citation], which should include plaintiff's temporary or permanent inability to pursue the pleasurable aspects of life, such as recreation or hobbies." *Smith*, 260 Ill. App. 3d at 938, 631 N.E.2d at 1279, quoting Graham, *Pattern Jury Instructions: The Prospect of Over or Under-compensation in Damage Awards for Personal Injuries*, 28 De Paul L. Rev. 33, 60 (1978).

■ Here, then, plaintiff's proposed jury instruction misstated the law by declaring the loss of enjoyment of life is a component of *pain and suffering*, rather than *disability*. Plaintiff's proposed jury instruction would have improperly allowed disability and loss of enjoyment of life to be included as separate elements of damages. Moreover, a new trial will be granted for improper jury instructions only where the opposing party has suffered serious prejudice from the offending instruction. (*Thompson v. MCA Distributing* (1994), 257 Ill. App. 3d 988, 991, 629 N.E.2d 206, 208.) Here, there has been no showing of prejudice to plaintiff.

The evidence conflicted whether and to what extent any disability was caused by the November 1987 accident. Plaintiff testified although he had a preexisting back condition, after the November 1987 accident he could no longer play with his son in the same manner as before the accident—for example, by swimming, walking, or playing ball with him. However, Dr. Burkle, who treated plaintiff after the November accident, testified plaintiff already was permanently and "totally disabled" prior to the November accident. Dr. Burkle also testified plaintiff already would have had great difficulty doing such things as throwing a ball prior to the November car accident. Dr. Baird, another treating physician of plaintiff, testified plaintiff's disability worsened after the November accident, but Dr. Baird could not say "how much of [plaintiff's] present disability is due to the [November] accident or due to a natural progression in the underlying osteoarthritis." Given this uncertain and conflicting testimony, even had the jury been instructed on "loss of enjoyment of life," the jury still could have awarded plaintiff zero damages for either disability or pain and suffering, on the basis plaintiff had failed to meet his burden of proving these damages with reasonable certainty. The trial court did not abuse its discretion in refusing to allow plaintiff's tendered jury instruction.

■ Plaintiff finally argues a new trial is warranted because the jury's verdict was against the manifest weight of evidence. The amount of a verdict is generally within the discretion of the jury. However, a new trial will be ordered if the damages are manifestly inadequate or if it is clear that proved elements of damages have

been ignored (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 407, 485 N.E.2d 4, 6), or if the jury's verdict is inconsistent (*Wottowa Insurance Agency, Inc. v. Bock* (1984), 104 Ill. 2d 311, 316, 472 N.E.2d 411, 413).

■ Plaintiff first asserts the verdict was inconsistent because the jury awarded damages for medical expenses and the aggravation of a preexisting condition, but did not award any damages for pain and suffering. Generally, a failure by the jury to award damages for pain and suffering is not necessarily inconsistent with an award in other damage categories. (*Griffin v. Rogers* (1988), 177 Ill. App. 3d 690, 532 N.E.2d 591; *Perry v. Storzbach* (1990), 206 Ill. App. 3d 1065, 565 N.E.2d 211; *Buttita v. Stenberg* (1993), 246 Ill. App. 3d 1012, 617 N.E.2d 122; *Craigmiles v. Egan* (1993), 248 Ill. App. 3d 911, 618 N.E.2d 1242.) However, a line of cases exists which holds a jury verdict is inconsistent where the jury awards damages for pain-relieving medication, treatment, or therapy, but does not award any damages for pain and suffering. (*Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038, 495 N.E.2d 141; *Healy v. Bearco Management, Inc.* (1991), 216 Ill. App. 3d 945, 576 N.E.2d 1195; *Rice v. Merchants National Bank* (1991), 213 Ill. App. 3d 790, 572 N.E.2d 439; *Kumorek v. Moyers* (1990), 203 Ill. App. 3d 908, 561 N.E.2d 212.) Plaintiff declares these latter cases control here because, he contends, the jury awarded $5,000 in future pain-relieving medication but awarded nothing for pain and suffering.

Defendant responds by citing *Griffin, Perry, Buttita,* and *Craigmiles,* and points out *Hinnen* and its progeny were severely criticized in *Buttita*. Defendant relies primarily on *Craigmiles,* where this court upheld a jury verdict awarding damages for the aggravation of a preexisting injury, medical expenses, and lost earnings, but awarding nothing for pain and suffering or disability. This court declared such a verdict was not inconsistent: "[t]he fact that the jury found aggravation of the prior injury did not require it to find the existence of new pain and suffering beyond that which plaintiff would have from her existing condition." (*Craigmiles,* 248 Ill. App. 3d at 928, 618 N.E.2d at 1253.) We agree *Craigmiles* controls here, and need not decide whether we disagree with the rule in *Hinnen,* because that line of cases is distinguishable.

Here, the past medical expenses submitted to the jury included only doctor's visits, diagnostic tests, and fees for interpretation of those tests, totalling slightly over $3,000. There were no bills submitted to the jury for pain-relieving medication, treatment, or therapy. The jury awarded $3,000 in past medical expenses, thereby obviously excluding any award for past pain-reducing medical expenses. In ad-

dition, the jury awarded $5,000 in future medical expenses. Plaintiff argues the jury intended this to reflect the cost of future pain-relieving medication, as argued in plaintiff's rebuttal during closing argument. However, unlike with past medical expenses, no itemization of estimated future medical expenses was offered into evidence, either as an exhibit or as testimony. Given this lack of guidance provided to the jury, there are other equally plausible explanations for the jury's award of $5,000 for future medical expenses. Given the jury awarded damages for past diagnostic services which had been necessary to evaluate the extent of the aggravation of plaintiff's preexisting condition, the jury could have believed future diagnostic services would continue to be required over the remainder of plaintiff's lifetime to monitor the extent of the aggravation of plaintiff's preexisting condition. Indeed, Dr. Burkle testified he had already offered to refer plaintiff to a neurosurgeon for evaluation. In short, plaintiff's contention the jury awarded $5,000 for future pain-relieving medication is speculation. As such, the rule in *Hinnen* does not apply, and instead *Craigmiles* controls.

Plaintiff would have us distinguish *Craigmiles* because here, he contends, the evidence was such no reasonable jury could have found he had not incurred pain and suffering caused by the November accident. Plaintiff also argues on this basis the jury verdict was manifestly inadequate. We disagree. Contrary to plaintiff's contentions, the evidence on his pain and suffering was very similar to the evidence concerning his disability: the evidence conflicted whether or to what extent any pain or suffering was caused by the November 1987 accident. Plaintiff testified he already had a painful preexisting back condition, for which he regularly took pain medication, prior to the November accident. He stated his pain increased after the accident and he now takes an increased dosage of pain medication. He admitted, however, that since the accident, he has not received any treatment for his condition other than pain medication. Dr. Baird, one of plaintiff's treating physicians, testified plaintiff's pain appeared to worsen after the November accident, but his pain would be expected to worsen over time anyway because of his preexisting back condition. Dr. Baird could not say how much of plaintiff's present condition "was due to the [November] accident or due to a natural progression in the underlying osteoarthritis." Dr. Burkle, who treated plaintiff after the November accident, testified plaintiff experienced pain after the accident, and the nature of the aggravation would usually produce pain. However, Dr. Burkle admitted plaintiff already was experiencing severe pain, and taking pain medication, prior to the November accident. Given this testimony, the jury could have decided to award zero damages for pain and suffering.

Plaintiff makes one last attempt to argue *Craigmiles* does not control, citing *Urban v. Zeigler* (1994), 261 Ill. App. 3d 1099, 634 N.E.2d 1237. In *Urban*, the appellate court remanded for a new trial on damages because the jury awarded damages for medical expenses, but no other element of damages. *Urban* distinguished *Craigmiles* on its facts, but also declared:

> "[W]e question the rationale of *Craigmiles*. In our view, a damage award for medical expenses and aggravation of a preexisting condition without an award for pain and suffering is irreconcilably inconsistent. If there was sufficient evidence to support an award of damages for aggravation of a preexisting condition, it logically follows that there was sufficient evidence of the plaintiff's increased pain and suffering due to the aggravated injury. *** By definition, if a preexisting condition is aggravated, it has worsened and is accompanied by increased pain and/or suffering." (Emphasis omitted.) (*Urban*, 261 Ill. App. 3d at 1104-05, 634 N.E.2d at 1242.)

Plaintiff would have us adopt the reasoning of *Urban*, thereby rejecting *Craigmiles*. This we decline to do, because we disagree with *Urban*'s questioning of *Craigmiles*.

Where there is sufficient evidence to support an award of damages for aggravation of a preexisting condition, it does *not* logically follow there is sufficient evidence of the plaintiff's increased pain and suffering due to the aggravated condition. Many ailments or conditions may have no accompanying symptom of pain or other suffering. Likewise, the *aggravation* of a preexisting condition may occur without any accompanying symptom of pain or suffering. Additional medical diagnosis and treatment may be needed because of the aggravation, but increased pain or suffering does *not necessarily* result, either from the condition itself or from the treatment of the condition, unless one classifies the inconvenience of going to the doctor as "suffering." Whether pain or suffering, or an increase in pain or suffering, resulted from an aggravation of a preexisting ailment or condition is within the province of the jury to decide given the facts in each individual case. Alternatively, a jury might find aggravation of a preexisting injury occurred, but pain and suffering caused by that aggravation to be so minimal as to not justify monetary compensation. In short, a jury verdict is not necessarily inconsistent merely because the jury awards damages for the aggravation of a preexisting condition but does not award damages for pain and suffering.

Plaintiff finally argues the jury ignored proved elements of damages: pain and suffering, and past medical expenses. We have already explained why the jury could have awarded zero damages for

594

pain and suffering. Plaintiff next asserts the jury ignored proved past medical expenses by awarding only $3,000 when the evidence showed past medical expenses of $3,032.93. This argument is without merit. The jury awarded 99% of the past medical expenses requested by plaintiff. The jury did not ignore proved past medical expenses.

The trial court's denial of plaintiff's motion for a new trial is affirmed.

Affirmed.

LUND and McCULLOUGH, JJ., concur.