KELLY SIMON, a Minor, By and Through Her Mother and Next Friend, Sandra Simon, Plaintiff-Appellant, v. ERIC VAN STEENLANDT *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—94—1831

Opinion filed March 29, 1996.

Kevin E. Bry, of Oak Park, for appellant.

Law Offices of Thomas P. McLaughlin, of Hoffman Estates (Gary L. Kennedy, of counsel), for appellee Eric Van Steenlandt.

Modesto, Reynolds & McDermott, of Chicago (Rocco J. DeMeo and William E. Hoversen, of counsel), for appellee Daniel L. Simon.

JUSTICE CAHILL delivered the opinion of the court:

Kelly Simon was a passenger in her father's car when it collided with a car driven by defendant Eric Van Steenlandt. Kelly sued Eric Van Steenlandt and her father, Daniel L. Simon, for negligence. After trial, a jury found for defendant Van Steenlandt and against Kelly's father. The jury awarded Kelly damages of $2,300 for future medical expenses and $300 for pain and suffering. They returned a zero verdict on the issue of permanent disfigurement. The court entered judgement for $2,600. We affirm.

Defendant Daniel L. Simon testified that on May 15, 1988, he was driving his nine-year-old daughter, Kelly, to her baseball practice for team pictures. At the intersection of Route 83 and Dempster Street, Daniel drove into the intersection and stopped in the left-turn lane, awaiting an opportunity to turn. As he waited for traffic to clear, the light changed from green to amber and then to red. As he began the left turn, another vehicle, driven by Van Steenlandt, entered the intersection from the opposite direction and collided with Daniel's car.

Van Steenlandt's car struck Daniel's car on the passenger door. Kelly was seated in the front passenger seat. The impact caused glass to shatter and cut Kelly's forehead. Kelly's wound required stitches, which, when removed, left a visible scar on her forehead.

Dr. David Teplica, a plastic and reconstructive surgeon, testified at trial that Kelly's wound healed as well as could be expected. He said that her scar was stable and would remain so for the rest of her life. He said that the scar could be treated but not made to disappear. He said: "Once [a] scar has been formed it's there and there [is] no way to change that."

He then testified that reconstructive surgery could make the scar "less apparent to the naked eye." He said that surgery could not guarantee a result, but Kelly was a good candidate for reconstructive surgery. Teplica estimated the cost of reconstructive surgery to be $2,300.

Kelly raises five issues on appeal: whether (1) there was improper closing argument; (2) a conflict of interest existed between Daniel Simon and his lawyer; (3) the court erred in its instructions on mortality tables and future medical expenses; (4) the verdict was inconsistent and inadequate; and (5) the cumulative effect of the alleged errors denied her a fair trial.

■ Kelly first argues that reference in closing argument to Kelly's mother as a party in interest was improper and prejudiced the plaintiff.

The record reveals that Kelly's counsel said in closing argument that Kelly was the only party in interest and that any judgment she received would be hers alone. In response, Van Steenlandt's counsel said that Sandra Simon, Kelly's mother, was a necessary party and explained that Kelly did not have the legal capacity to sue absent her next friend and mother. Kelly's counsel objected and the objection was sustained.

We believe the judge cured any prejudice when he sustained the objection and instructed the jury that Kelly Simon was the real party in interest. The remarks were not so prejudicial that a new trial is warranted. *Green v. University of Chicago Hospitals & Clinics*, 258 Ill. App. 3d 536, 631 N.E.2d 271 (1994).

■ Kelly also argues that she was prejudiced when Simon's counsel offered his personal views of the evidence in closing argument. Kelly waived this issue for review. She did not object to the remarks at trial. *Robinson v. Wieboldt Stores, Inc.*, 104 Ill. App. 3d 1021, 1027, 433 N.E.2d 1005 (1982).

■ Kelly next argues that a conflict of interest between Daniel Simon and his lawyer prejudiced her case. Kelly's original complaint named Van Steenlandt as the only defendant. Van Steenlandt then filed a third-party complaint for contribution and named Daniel Simon as a third-party defendant. While this case was pending, the supreme court decided *Cates v. Cates*, 156 Ill. 2d 76, 619 N.E.2d 715 (1993). *Cates* abolished the doctrine of parental tort immunity in automobile negligence actions. Kelly then filed an amended complaint which named Daniel Simon as an additional defendant.

Kelly cites no authority for the theory that a conflict of interest is created when counsel for a parent-defendant is retained by the parent's insurer. The supreme court in *Cates* pointed out that "[i]t is now generally recognized that the existence of liability insurance eliminates the actual adversity of parent and child in negligence actions. *** Clearly the child and father [are] only nominally adverse." *Cates*, 156 Ill. 2d at 100-01. Kelly seems to be arguing that a lawyer who defends a parent's rights under a policy of insurance finds

himself in conflict with the "interest" the parent may have in a child's recovery for injuries. But the lawyer in this case was only retained to defend the parent's rights under the policy. An "interest" the parent might have in a monetary recovery for a child is irrelevant to the defense lawyer's role. The supreme court observed in *Cates*: "[T]he 'real' defendant is the insurer." *Cates*, 156 Ill. 2d at 101.

■ Kelly next argues that it was improper for the trial court to insist that an instruction on mortality tables be tied to an instruction on future medical expenses. She argues that the ruling hampered her right to instruct the jury on her theory of the case. Kelly argues that the evidence she offered at trial justified instructions only on pain and suffering and permanent disfigurement. Kelly cites *Advance v. Thompson*, 387 Ill. 77, 55 N.E.2d 57 (1944), for the proposition that a mortality table instruction is proper when there is evidence of a permanent injury. She is correct. But, she overlooks the argument of the defendant that the testimony by her expert about permanent injury also included an opinion of the cost of future medical expenses. The case cited by Kelly for her right to a set of instructions that reflects her theory of the case works against her. The defendant enjoys the same right. "Each party *** has the right to have the jury instructed on its theory of the case, and the circuit court, in its exercise of discretion, must instruct the jury on all issues which it finds to have been raised by the evidence presented." *Marin v. American Meat Packing Co.*, 204 Ill. App. 3d 302, 310, 562 N.E.2d 282 (1990).

The trial court properly concluded that the testimony of Kelly's expert was evidence of both permanent disfigurement and future medical expenses that might be incurred to lessen the impact of that disfigurement. Seen as evidence of both, the cross-examination of the expert which elicited the cost of future medical expenses was proper, and a jury instruction on those expenses was proper.

■ Kelly next cites *Urban v. Zeigler*, 261 Ill. App. 3d 1099, 634 N.E.2d 1237 (1994), and *Hinnen v. Burnett*, 144 Ill. App. 3d 1038, 495 N.E.2d 141 (1986), for the proposition that the damages awarded were inconsistent and inadequate. Her argument is based upon a zero award for permanent disfigurement at the same time the jury awarded $2,300 for future medical expenses. Kelly reasons that the future medical expense award could be based only upon testimony that a $2,300 operation would be needed to lessen the visibility of the disfiguring scar. She concludes that a $2,300 award to lessen a disfigurement coupled with a damage value of zero is inconsistent.

An award may be contrary to the manifest weight of the evidence when "[it is] palpably inadequate, when the jury disregards a

proven element of damages, or when \*\*\* the award bears no reasonable relationship to the plaintiff's loss." *Urban*, 261 Ill. App. 3d at 1102. We do not quarrel with the general rule in *Urban*. But, in the cases cited by Kelly, the courts concluded that the juries were inconsistent when they ignored damages for pain and suffering, but awarded damages for medical expenses. See *Urban*, 261 Ill. App. 3d at 1102; *Hinnen*, 144 Ill. App. 3d 1038, 495 N.E.2d 141; *Healy v. Bearco Management, Inc.*, 216 Ill. App. 3d 945, 576 N.E.2d 1195 (1991); *Rice v. Merchants National Bank*, 213 Ill. App. 3d 790, 572 N.E.2d 439 (1991); *Kumorek v. Moyers*, 203 Ill. App. 3d 908, 561 N.E.2d 212 (1990); but see *Knight v. Lord*, 271 Ill. App. 3d 581, 648 N.E.2d 617 (1995).

A zero award for pain and suffering is not analogous to a zero award for permanent disfigurement when the latter is coupled with a medical expense award for plastic surgery to lessen the visibility of the disfigurement. Based on the evidence the jury heard from Kelly's expert in this case, it could have reasonably concluded that the permanent disfigurement, after surgery, was so slight as to not justify an award for damages. Where a jury could reasonably conclude that damages are minimal, a jury award of zero will not be set aside. *Knight*, 271 Ill. App. 3d at 592. We find no reason to disturb the jury's judgment based upon the evidence it heard.

Kelly's final argument, that the cumulative effect of the alleged errors warrants a new trial, must fail based upon our disposition of the four issues considered separately.

Affirmed.

HOFFMAN, P.J., and THEIS, J., concur.